**STATE of Missouri, Respondent,**

v.

**Julius Ronald BAGBY, Appellant.**

**No. WD 38394.**

Missouri Court of Appeals,
Western District.

May 19, 1987.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 30, 1987.

Application to Transfer Denied
Sept. 15, 1987.

Robert G. Duncan, Kansas City, for appellant.

William L. Webster, Atty. Gen., Jeffrey Philip Dix, Asst. Atty. Gen., Jefferson City, for respondent.

Before PRITCHARD, P.J., and MANFORD and BERREY, JJ.

PRITCHARD, Presiding Judge.

By verdicts of a jury, defendant was found guilty of the Class B felony of sodomy for which punishment was assessed at five years imprisonment; and of the Class C felony of attempted rape, punishment being assessed at one year imprisonment and a fine to be set by the court. The court assessed a fine on the latter crime of $500.00. The sentences were ordered to run concurrently. Section 558.026 RSMo 1986.

In Point B, appellant contends that "The evidence failed to establish that the two offenses occurred within three years of

filing the original informations herein and therefore, the prosecution and conviction is barred by the statute of limitations." Section 556.036, RSMo 1986, in effect at the time of these alleged offenses, provides: "2. Except as otherwise provided in this section, prosecutions for other offenses must be commenced within the following periods of limitations: (1) For any felony, three years." It appears that the original informations were filed on July 27, 1985, alleging that both offenses occurred on or about May 30, 1985.

The victim of the crimes was alleged to be Amy _____, a six year old female at the time of trial. Mary Tustison was babysitting Amy in July, 1985, and was alerted that something was amiss when she discovered Amy giving Mary's five year old son a "head job". Mary told Amy's mother about the incident and the two of them took Amy to the police station where Amy gave Sergeant Robert W. Gant two statements on July 26, 1985. Mrs. Tustison testified on cross-examination: "Q. And you and the mother tried to figure out when this happened, isn't that correct? A. Pardon? Q. You and the mother tried to figure out what day this is supposed to have happened? A. I don't know what day it could've happened because I did not know when it happened. Q. All right, you were present in the police station when that was being discussed, isn't that correct? A. Yes, sir. Q. And it was determined that it happened on or about May 30th, isn't that correct? A. Yes, sir. Q. While [the mother] was in juvenile court over a juvenile matter, is that correct? A. Yes, sir." Mary also testified that it was also determined that it was while Eric Hammons was babysitting, and Mary knew that the juvenile court in Clay County has court during the day. Amy's mother did not testify. It is not shown by this record just how the May 30th day was determined, and there was no evidence of the date when the mother attended juvenile court.

Amy testified that Ronald and Eric babysat with her a little bit, but she did not remember what month they were babysitting. It was at night when Ronald was at her house babysitting. While she was lying in bed trying to sleep, this occurred: "What did Ronald do to you? A. Well, he stucked his pee-pee in mine and I wouldn't let him and he kept on saying, 'please, Amy, please, Amy', and I kept on saying, 'no'." He tried to stick it inside, and afterward he felt her with his hands down on her pee-pee. On cross-examination, Amy testified that she was not in school when it happened, but "It was a long time ago." She told her mother about what happened the next morning. Amy thought she was four years old when it happened. Eric started babysitting at 2:30 in the afternoon, when it was still daylight, and she thought Ronald came over at night. Amy remembered that when she was at the hospital, she said that Ronald put his finger in her bottom, but she testified that he did not do that. "Q. That's what you told the hospital? A. I think because I was a little kid. Q. You were just a little kid then? A. I think I was two years old or one year old then. Q. Oh, you were two years old or one year old when that happened? A. Uh huh." At another point, Amy testified as follows: Q. What time was it that Eric talked to you about playing strip poker? A. I think it was the day after, the night after that Ronald did it. Q. This didn't happen at the same time? A. I think it did because I was a little tiny kid. Q. You were a little tiny kid? A. Uh huh, but I wasn't a baby, I was only, I think, two or three years old. Q. You were only two or three when this happened? A. Uh huh. Q. So, it was three or four years ago? A. Yeah. Q. You're talking about that's when Ronald did these things you're telling us about? A. Yes."

Lorna Gay Teague lived in an apartment "catty-cornered" across the street, and about 70 feet from 336 East Broadway in Excelsior Springs, Missouri, where Amy lived. At about 10:30 at night in May or June of 1985, Lorna was sitting on the ledge of her apartment when she heard a little girl scream, and looked that way and saw a little girl, maybe five years old with blond hair, who was across appellant's lap as he was leaning up against the balcony, and he was hunching her. He put her

down and she went running into the house. Then he stood up, zipped his pants up and started laughing. There was another similar incident on the balcony with another man in July. Lorna testified further: "Q. How do you remember that this happened, the first incident at the end of May? A. Well, something like that is kinda hard to put out of your mind. But it, I know it was towards the end of May, but, because I think the last day of May I went, left to go to the lake or the first day of June." Amy, in testifying, told the jury that appellant never did anything out on the balcony.

■ Trial was had on April 7, 1986. Amy testified that her birthday was September 19, and that she was then six years old, so if that is true, she must have turned six on September 19, 1985, making her birthdate September 19, 1979. Amy testified further with considerable equivocation that she was two, three or four years old at the time of the offenses. The jury, however, was entitled to believe some, or none of her testimony in the light of the facts, circumstances and other testimony in the case. *State v. Holt*, 592 S.W.2d 759, 774[24, 25] (Mo. banc 1980). Thus, the jury could have found that Amy was five years old at the time of the offenses, May 30, 1985, as charged; she would not have turned six until September 19, 1985. The other facts in the case come from Lorna Gay Teague who saw appellant on the balcony of Amy's apartment attempting some kind of sexual act with her. This at least places appellant at the scene of the crime on the night of May 30, 1985, and that he was then engaged in an improper act with Amy. Although the state bears the burden of proof that the offenses occurred within the three-year statutory limitation period, 21 Am.Jur.2d, Criminal Law, § 223; 22A C.J.S. Criminal Law, § 569, considering all the facts and circumstances in the case and the jury's prerogatives with respect thereto, it cannot be said that the state failed to satisfy its burden of proof. Point B, raising the issue, is overruled.

■ In Point A, appellant contends that the evidence was not sufficient to support the guilty verdict of sodomy, arguing that the act was done by touching with the fingers, and there was no penetration. Section 566.060.3. RSMo 1986, provides that a person commits the crime of sodomy if he has deviate sexual intercourse with another person to whom he is not married who is less than 14 years old. Section 566.010.1(2) defines "deviate sexual intercourse as any sexual act involving the genitals of one person and the mouth, tongue, hand or anus of another person. Penetration is not an element of sodomy." *State v. Hicks*, 716 S.W.2d 387 (Mo.App. 1986); *State v. Holmes*, 654 S.W.2d 133 (Mo.App.1983). The intent of the Legislature in defining the crime is clear. Point A is overruled.

■ In Point C, appellant claims that the offenses were not supported by substantial and sufficient evidence in that the victim's testimony was not corroborated and her testimony was conflicting, contradictory, improbable and unconvincing. Amy's testimony, above detailed, as to the facts of the crime—the touching of her genitals and the attempted rape, is direct, clear and is consistent with her other statements given over a several month period. It is not conflicting, contradictory, improbable and unconvincing, and thus needs no corroboration. *State v. Sipes*, 651 S.W.2d 659, 660 (Mo.App.1983). The victim of rape or sodomy may provide, through her testimony alone, sufficient evidence to sustain the convictions. *State v. Hamrick* 714 S.W.2d 566, 567 (Mo.App.1986). There is, however, some corroboration through the testimony of Lorna Teague, which strengthens the state's case. Point C is overruled.

The judgment is affirmed.

All concur.