STATE of Missouri, Respondent,

v.

D.A.R., Appellant.

No. WD 39515.

Missouri Court of Appeals,
Western District.

May 17, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 28, 1988.

Hugh D. Kranitz, Kranitz & Kranitz, St. Joseph, for appellant.

William L. Webster, Atty. Gen., Deborah L. Ground, Asst. Atty. Gen., Jefferson City, for respondent.

Before MANFORD, P.J., and TURNAGE and COVINGTON, JJ.

COVINGTON, Judge.

Defendant, D.A.R., was convicted in a jury-tried case of two counts of sodomy, § 566.060, RSMo 1986,[1] and sentenced to consecutive terms of 15 and 7 years imprisonment. The judgment is affirmed.

A.R., defendant's daughter, was nine years old when the incidents occurred. Defendant and A.R.'s mother had separated early in 1986. A.R. and her sister lived with their mother and visited defendant, who had custody of their younger brother, on alternate weekends.

A.R. visited her father on the weekend of June 20–21, 1986. She testified that on Friday, June 20, she had been playing outside with her brother and sister when defendant called her into the house. She went into the bathroom with defendant to see how well a new cleaning woman had cleaned the room. A.R. testified that defendant "made me squat down and suck his penis." A.R. also testified that on the evening of Saturday, June 21, 1986, while her brother and sister were asleep on the sofa and she was watching t.v., defendant made her come into his bedroom and lie on the bed and suck his penis.

Mr. George Davis, Medical Records Administrator for Heartland West Hospital, testified to the identity and authenticity of records contained in A.R.'s hospital file. Among other documents, Mr. Davis identified a pathology lab report which contained the result of a test for chlamydia. Mr. Davis stated that some of the lab tests had been performed in the hospital's pathology lab, while at least one, an "R.P.R." test, had been done by a reference laboratory. It was not clear which lab had performed the chlamydia test. Mr. Davis was unable to identify the person who had conducted the chlamydia test. He stated that the hospital's pathology lab was staffed by three physicians and some lab assistants.

Greg Thompson, M.D., A.R.'s pediatrician, testified regarding the contents of A.R.'s medical file. He testified that the

---

1. All statutory references are to RSMo 1986 unless otherwise noted.

lab report showed a positive result for chlamydia, that the chlamydia test was performed on a vaginal swab, that the presence of chlamydia in the vagina of a nine-year-old child raises a suspicion of some kind of sexual assault, and that the chlamydia was probably sexually caused. He testified that there was no other medical evidence of sexual abuse.

Defendant testified in his own defense. He denied any sexual contact with his daughter whatsoever. He gave a detailed account of the events of the two days, which was, to some extent, corroborated by other witnesses.

Portions of the deposition of Janet Easter were read into the record. Mrs. Easter testified on direct examination that she and her husband were friends of defendant and that on the weekend of June 20–21, 1986, she, her husband and her children spent time with defendant and his children. She described the events of the two days, corroborating defendant's testimony, and described A.R.'s behavior around her father as loving and normal. On cross-examination she admitted to having had a sexual relationship with defendant during a period of marital difficulties with her husband. She stated, over defendant's objection, that she had engaged in oral sex with defendant, that he showed an inclination more to oral sex than ordinary copulation, and that he showed a particular liking for her performing oral sex on him.

Defendant raises four points of error. In his first point, he contends that the trial court erred in admitting into evidence hospital records of A.R. which reported the positive result of a pathology laboratory test for chlamydia, a vaginal infection which can be transmitted sexually. Defendant argues that the documents containing the test results were inadmissible because they were not properly qualified under the Uniform Business Records as Evidence Act, §§ 490.660 to 490.690, and because there was no evidence showing defendant to be a carrier of chlamydia and no evidence establishing that chlamydia could have been transmitted by the type of sexual contact that allegedly occurred between defendant and his daughter.

■ Even if the laboratory reports were hearsay, and even if the reports were irrelevant, the information contained in the exhibit regarding the test results was introduced into evidence through the testimony of Dr. Greg Thompson without objection. The defendant has assigned no error to Dr. Thompson's testimony regarding the results of the chlamydia test. If evidence is improperly admitted but other evidence establishes essentially the same facts, there is no prejudice to the defendant and no reversible error. *State v. Carter*, 670 S.W.2d 104, 108 (Mo.App.1984).

Defendant next asserts trial court error in admitting testimony of Janet Easter regarding certain consensual sexual acts in which she engaged with the defendant; the defendant contends that the evidence was irrelevant and prejudicial.

The trial court is vested with broad discretion in ruling questions of relevancy of evidence. Absent a clear showing of abuse of that discretion, the appellate court should not interfere with the trial court's ruling. *State v. Brown*, 718 S.W.2d 493, 493–94 (Mo. banc 1986). Whether or not evidence is relevant depends upon whether it tends to prove or disprove a fact in issue or to corroborate evidence which is relevant and which bears on the principal issue. *State v. Clark*, 711 S.W.2d 928, 932 (Mo. App.1986). "In the case of crimes involving illicit sexual relations or acts, other acts of the same character may ordinarily be shown, not as proof of independent substantive offenses, but as corroborative evidence to show a disposition upon the part of the accused and as tending to support the specific offense for which he is being tried." *State v. Kornegger*, 363 Mo. 968, 255 S.W.2d 765, 768 (1953) (quoting 22 C.J. S. Criminal Law § 691).

The questions asked Janet Easter by the State concerning the defendant's possible disposition toward oral sex were:

Q. Now, I've got to get very personal. Have you ever had oral sex with [D.A.R.]

MR. KRANITZ: Objection; irrelevant and immaterial.

THE COURT: Overruled.

A. Yes.

Q. Did he show any inclination more to oral sex than ordinary copulation?

MR. KRANITZ: Same objection.

THE COURT: Same ruling.

A. Yes.

Q. Did he show any particular liking for oral sex; meaning you doing oral sex on him?

MR. KRANITZ: Same objection.

THE COURT: Overruled.

A. Yes.

■ The defendant was charged, pursuant to § 566.060.3, with having deviate sexual intercourse with his daughter. Oral sex falls within the definition of deviate sexual intercourse which is set forth in § 566.010.1(2). Janet Easter's testimony tends to corroborate the child's testimony that the defendant made her perform oral sex on him by indicating a disposition on the part of the defendant for that type of sexual activity. The defendant relies on *State v. Hayes,* 356 Mo. 1033, 204 S.W.2d 723 (1947), in support of his position that such evidence is inadmissible. In *Hayes,* a statutory rape case, testimony that the defendant had had illicit relations with several women was held inadmissible as an improper attack on the defendant's character. In the present case, however, the objection was on the basis of relevancy, and the evidence was relevant.

■ Defendant has requested plain error review under Rule 84.13 of similar testimony elicited from him on cross-examination. Rule 84.13 applies only to civil cases. The court has considered the matter, however, and no manifest injustice is apparent. Rule 30.20.

Defendant next alleges that the trial court erred in failing to direct a verdict of acquittal at the close of all the evidence because the testimony of the victim was so confusing and inconsistent that it was rendered unbelievable in the absence of corroborative support.

In reviewing the sufficiency of the evidence, the appellate court will accept as true all of the evidence favorable to the state, including all favorable inferences which may reasonably be drawn from the evidence, and will disregard all evidence and inferences to the contrary. The appellate court will not weigh the evidence nor determine the credibility of the witnesses, but will limit the scope of its review to a determination of whether the verdict is supported by substantial evidence. *State v. Harvey,* 641 S.W.2d 792, 799 (Mo.App. 1982).

In *State v. Edgar,* 710 S.W.2d 2, 4 (Mo. App.1986), a forcible rape case, this court held that inconsistencies in a victim's testimony which did not bear upon any proof essential to the case would not undermine the conviction where the testimony was without internal variance on any essential element of the crime. The same principles have been applied in sodomy cases. *See, e.g., State v. Douglas,* 720 S.W.2d 390, 392 (Mo.App.1986); *State v. Ellis,* 710 S.W.2d 378, 380–83 (Mo.App.1986).

■ To sustain a conviction for sodomy in this case, the state must show that the defendant and the victim were not married to one another, that the victim was less than fourteen years old, and that the defendant had deviate sexual intercourse with the victim. § 566.060.3. Deviate sexual intercourse is defined as any sexual act involving the genitals of one person and the mouth, tongue, hand or anus of another person. § 566.010.1(2). The testimony of A.R. revealed that the defendant was her father, that she was not married to him, and that she, the child, was born February 8, 1977. Further, it was established by the child's testimony that the defendant on June 20, 1986, and again on June 21, 1986, had deviate sexual intercourse with her by forcing her to suck his penis.

The defendant asserts that the child's testimony on direct and cross-examination contradicted her prior testimony at the preliminary hearing and in depositions. He states that she could not recall whether his pants were buttoned or zipped on June 20, 1986, whether she saw the defendant kissing Janet Easter, whether there had been prior acts of sexual intercourse between the defendant and the victim, and when she visited the defendant.

On direct examination, A.R. testified that on June 20, 1986, she and her sister were having a weekend visitation with the defendant and their brother. The child testified that she and her sister arrived at the defendant's home at 5:00 or 5:30 p.m., and that she played outside for awhile with her brother and sister. The child testified that the defendant called her into the house. He had hired a new cleaning woman, and the child went with the defendant into the bathroom to see how well the woman had cleaned. A.R. testified that while they were in the bathroom the defendant made her squat down and suck his penis. A.R. testified that the defendant was wearing work clothes and that he unzipped his pants. On cross-examination, however, when she was reminded of an earlier statement, the child testified that the defendant had unbuttoned his pants on June 20. She testified that his penis "was hard."

With respect to Saturday, June 21, the child testified that it was dark outside and that her brother and sister were asleep on the sofa while she was watching television. The defendant required her to go into his bedroom and lie on his bed and suck his penis. The child testified that the defendant was wearing jeans, which he unzipped. A.R. testified that the defendant told her he would whip her if she told anyone about these incidents. The child testified that she was afraid at the time the incidents occurred and that she was afraid of seeing her father again.

On cross-examination the child described the position she was in and the position the defendant was in at the time the second incident occurred. Although the sexual act could not have occurred while the child was in the position she described, the cross-examination did not actually establish the position the defendant and the child were in at the time the actual sexual contact occurred. The child's testimony allows no doubt as to any element of the crime charged. Other inconsistencies in the child's testimony touched on collateral matters.

It is not unusual for the testimony of a child of tender years to contain some contradictions. *State v. Ginnery*, 617 S.W.2d 115, 117 (Mo.App.1981). Here, any inconsistencies in the child's testimony were within the province of the jury to resolve. *State v. Mick*, 674 S.W.2d 554, 558 (Mo. App.1984). Because the child's testimony was clear and was not contradictory on the essential elements of the offense, corroboration was not required.

Defendant next alleges that the trial court abused its discretion in denying defendant's motion for a mistrial during the state's questioning of police detective Michael Hirter. Defendant contends that questions relating to the manner in which Sgt. Hirter conducted his investigation, particularly with reference to reports and "tests," created impermissible, prejudicial inferences in the minds of the jurors.

■ The grant of a mistrial rests largely within the discretion of the trial court and the remedy of a mistrial should be used only in cases of grievous error. An appellate court will not interfere with the exercise of the trial court's discretion absent a manifest abuse of discretion. *State v. Cooper*, 708 S.W.2d 299, 304 (Mo.App.1986). As a general rule, when improper questions are asked but not answered, no prejudicial error occurs. *State v. Gilmore*, 681 S.W.2d 934, 942 (Mo. banc 1984).

■ The state asked a series of questions of Sgt. Hirter ostensibly designed to demonstrate the manner in which he conducted the investigation of the alleged offenses. Both defense counsel and the

court perceived the line of questions to be irrelevant and to be a possible attempt to bring inadmissible evidence to the attention of the jury. Defendant objected six times during the questioning. The court sustained each objection prior to any response by Sgt. Hirter. The officer was not asked actually to discuss any tests performed in the course of the investigation. The reference to tests occurred only once. The trial court did not abuse its discretion in denying the defendant's motion for mistrial.

The conviction is affirmed.

All concur.