**STATE of Missouri, Plaintiff/Respondent,**

v.

**William O'DELL, Defendant/Appellant.**

**William O'DELL, Plaintiff/Appellant,**

v.

**STATE of Missouri, Respondent/Respondent.**

No. 55230, 56831.

Missouri Court of Appeals, Eastern District, Division Three.

March 27, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 20, 1990 in No. 55230.

John A. Klosterman, Columbia, for defendant/appellant.

William L. Webster, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for plaintiff/respondent.

GRIMM, Judge.

In this jury-tried case, defendant appeals his conviction of sexual abuse in the first degree in violation of § 566.100.[1] Defendant was sentenced to four year's imprisonment. He also appeals the denial of his Rule 29.15 motion without an evidentiary hearing. We affirm.

Defendant raises four points of error. First, the trial court plainly erred in allowing victim's mother to testify about statements made by victim, because mother's testimony constituted improper bolstering of victim's testimony. We disagree, because such testimony is not plain error. Second, the trial court erred in allowing victim's mother to testify about statements made by victim pursuant to § 491.075, because that section violates defendant's right to confront the witnesses against him. We disagree, because our supreme court has found the statute to be constitutional.

For his third point, he alleges the trial court erred in allowing defendant's former stepson to testify that he had earlier found in defendant's possession photographs de-

---

1. All statutory references are to RSMo 1986.

picting young boys involved in sexual acts. We disagree, because even if we were to assume that his testimony was improperly admitted, the error (if it was error) was harmless. Fourth, the motion court erred in dismissing defendant's Rule 29.15 post-conviction motion without an evidentiary hearing. We disagree, because defendant did not allege facts sufficient to warrant a hearing.

## I.

Defendant makes no challenge to the sufficiency of the evidence. The facts supportive of the verdict disclose that defendant was a Cub Scout leader. Boys visited in his home, often spending the night there.

In December, 1986, Adam,[2] the ten-year old victim, spent the night with defendant. Adam was the only boy there that night. He and defendant shared a bed. Defendant told Adam that he would give him five dollars if he could rub Adam's penis. Adam did not reply. Defendant rubbed Adam's penis with his hand.

The next morning, another boy, Bill, arrived at defendant's house. Defendant took the two boys to a store. There, defendant gave Adam five dollars which Adam used to buy a football.

Later that day, defendant drove Adam to Adam's home. Defendant told Adam's mother that he had bought the football for Adam. He told her it was Bill's birthday, and he felt it would be unfair to buy something for Bill without buying something for Adam. Contrary to defendant's explanation, Bill's birthday was in early November.

At first, Adam was too scared to tell his mother or stepfather about the incident. On February 11, 1987, however, Adam told his mother what had happened at defendant's house in December.

At trial, she related that Adam told her that "if [defendant] could rub his penis, [defendant] would give [Adam] $5." Adam further told her that defendant "had given

him $5 and, in return, he had bought a football with it." On cross-examination, she also acknowledged telling the police that Adam told her that defendant "had asked [Adam] to let [defendant] touch [Adam] on other occasions while [Adam] was there."

David, age 11, told of being at defendant's house. He said that he slept in defendant's bed with defendant one night. When they were in bed together, defendant "said [David] could put [his] hands anywhere you want" on his body. David didn't do anything, and never returned to defendant's house. He did not tell his mother about this event until his mother heard about what had happened to other boys.

A former co-worker of defendant's told of a conversation he had with defendant. The conversation occurred following a news story about a man being arrested for child pornography. The co-worker asked defendant, "How could someone do something like that?" Defendant replied, "Oh sure. A lot of times these kids come from broken homes or homes with no fathers, and, you know, someone can just give them $5 for whatever."

After Adam told his mother what had happened, she called the police the next day. Defendant was charged with two counts of sexual abuse in the first degree. One count pertained to Adam, the other to an eleven-year old boy named Chris. Defendant was convicted of abusing Adam, but was acquitted on the other count.

## II.

■ At trial, Adam's mother was allowed to testify pursuant to § 491.075 about what Adam had told her regarding the incident. While defendant objected to her testimony, his objection was based on constitutional grounds rather than upon the ground that it improperly bolstered Adam's testimony. In his first point on appeal, however, defendant alleges that the

**2.** The names used are not the actual names of the boys involved.

trial court plainly erred in admitting her testimony. He argues that her testimony "improperly bolstered [Adam's] testimony that the sexual contact had in fact occurred in that [her] testimony exactly duplicated in each particular [Adam's] testimony."

Defendant concedes that his failure to raise this objection at trial limits our review to the plain error standard. "Plain error must be exercised sparingly. It is limited in its application to cases where there is a manifestation and showing that injustice or miscarriage of justice will result if plain error is not invoked." *State v. Fogle*, 743 S.W.2d 468, 470 (Mo.App.E.D. 1987). The question presented, then, is whether the admission of Adam's mother's testimony resulted in an "injustice or miscarriage of justice."

The issue of whether the admission of testimony which tends to bolster the testimony of a child victim of sexual abuse constitutes plain error has been decided in a number of Missouri cases. *See, e.g., State v. Wright*, 751 S.W.2d 48 (Mo.banc 1988); *State v. Harper*, 778 S.W.2d 836 (Mo.App.S.D.1989). "Absent a proper objection, the admission of evidence which may have the effect of 'bolstering' the testimony of a child victim is not plain error." *Harper*, at 839; *see also Wright*, 751 S.W.2d at 53.

Before receiving the evidence, the trial court conducted a hearing as required by § 491.075.1(1). It found, in effect, that sufficient indicia of reliability of the statements existed to allow them to be considered by the jury.

Here, Adam's mother's testimony was not a mere duplication of Adam's trial testimony. Further, because she "described the circumstances giving rise to and surrounding the making of the out-of-court statements, [her] testimony possessed probative value distinct from the child's statement alone." *State v. Bereuter*, 755 S.W.2d 351, 353 (Mo.App.E.D.1988). Point denied.

### III.

In his second point, defendant asserts that the trial court erred in permit-

ting Adam's mother to testify pursuant to § 491.075 because "section 491.075 violates [his] right to confront the witnesses against him guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, § 18(a) of the Missouri Constitution."

The Missouri Supreme Court addressed this issue in the *Wright* case. It found the statute to be constitutional. Point denied.

### IV.

Defendant's third point alleges "the trial court abused its discretion by permitting [his former stepson] to testify that he had several years earlier found pornographic photographs in [defendant's] possession." He argues that "the prejudice ... greatly outweighed the probative value of the evidence."

About six or seven years before trial, the stepson's mother and defendant were in the process of getting a divorce. At that time, the stepson, his wife, and another witness went to defendant's residence "to note property in case it was later removed" and "to observe and note any weapons."

He was asked what was found. Defendant objected, claiming "lack of relevance" and "remoteness in time." The objection was overruled. The stepson testified that he "went looking through [defendant's] possessions." While looking in the bottom drawer of a chest in a bedroom, he found a folder. The folder contained photographs of elementary age boys "holding their members," as well as engaging in "oral sex. That kind of thing."

The stepson showed the photographs to his wife. He did not take the photographs. Rather, he took pictures of the photographs and replaced them in the folder. The camera malfunctioned and no pictures were obtained. Thus, no pictures or photographs were offered in evidence. Defendant denied ever having the photographs.

Rulings on the admissibility of evidence are directed to the sound discretion

of the trial court. The trial court has discretion to determine the materiality and relevancy of evidence offered. "Absent clear abuse, an appellate court will not interfere with the trial court's ruling on the admission or exclusion of evidence." *State v. Clark*, 711 S.W.2d 928, 932 (Mo.App.E.D. 1986).

We recognize that evidence of prior sex crimes has often been held admissible in a trial of another sex crime. In *State v. Taylor*, 735 S.W.2d 412 (Mo.App.S.D.1987), numerous examples are cited. *Id.* at 415–418. None of those cases, however, refer to descriptions of photographs, or photographs, of sexual acts. Nor have the parties referred us to any cases on point.

We need not determine whether the trial court erred in admitting this evidence. "Error, which in a close case might call for reversal, may be disregarded as harmless when the evidence of guilt is strong." *State v. Ford*, 639 S.W.2d 573, 576 (Mo.Div. 1 1982).

Here, the evidence of defendant's guilt was strong. Adam testified unequivocally about the incident and the day after. Defendant's cross-examination of Adam did not attack his detailed recitation of the incident. Nor did defendant present any evidence that Adam or his mother had a reputation for not telling the truth.

On the other hand, defendant presented evidence concerning the reputation of Chris, the alleged victim in the other count. The evidence disclosed that his reputation for telling the truth was "not very good." In addition, defendant presented evidence that the boy who corroborated Chris' account had a reputation that he "likes to lie for no particular reason."

Further, Adam's mother's testimony was strong. The jury could have found her recitation of defendant's explanation as to why he purchased a football for Adam especially damaging.

Point denied.

## V.

In his fourth point, defendant alleges the motion court erred in "dismissing [defendant's] Supreme Court Rule 29.15 postconviction motion, without an evidentiary hearing, because [defendant] pleaded sufficient facts to state a claim for relief." He contends that his trial counsel was ineffective for failure to call Pat McDonald.

In his motion, he alleged:

Failure to call Pat McDonald to corroborate that [Adam's mother] and [Adam] testified in retaliation for my informing sheriff of her father's whereabouts when he was wanted by the sheriff's department 3 years ago in a shooting incident.

Adam and his mother testified. Neither of them was questioned about the incident involving Adam's grandfather. As a result, McDonald's proposed testimony would not have impeached either of those witnesses' statements.

Although defendant testified, he gave no testimony about this alleged incident. Thus, there was no testimony for McDonald to corroborate.

Defendant has not alleged any other facts to indicate that he was prejudiced by the court's dismissal of his motion. Point denied.

The judgments are affirmed.

SATZ, P.J., and SMITH, J., concur.