**STATE of Missouri, Plaintiff–Respondent,**

v.

**Glenn Clifford BOYER, Defendant–Appellant.**

**No. 16734.**

Missouri Court of Appeals, Southern District, Division Two.

Jan. 2, 1991.

Motion for Rehearing or Transfer Denied Jan. 23, 1991.

Application to Transfer Denied March 5, 1991.

J. Bryan Allee, Columbia, for defendant-appellant.

William L. Webster, Atty. Gen., John P. Pollard, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PARRISH, Presiding Judge.

Glenn Clifford Boyer (hereafter referred to as defendant) was charged with and found guilty of two counts of sodomy, a class B felony. §§ 566.060.3 and 558.011.-1(2).[1] He was charged and sentenced as a prior offender, § 558.016.2 and § 558.019.2(1), RSMo Supp.1988, and as a persistent sexual offender, § 558.018. This court affirms.

This case was tried before the court without a jury by reason of defendant's waiver of a jury trial. The court's findings have the force and effect of a jury verdict. Rule 27.01(b). Its judgment is to be affirmed if there is substantial evidence to support its findings. *State v. Giffin*, 640 S.W.2d 128, 130 (Mo.1982). On appeal this court accepts as true all the evidence tending to prove defendant's guilt, together with inferences favorable to the state that can be drawn therefrom. *Id.* All contrary evidence and inferences are disregarded. *Id.* Within these parameters, the record on appeal discloses the following facts.

Defendant is a distant relative of R.O., H.S.'s mother.[2] In the summer of 1989, defendant had occasions to be with H.S. who was then three years old. The two occasions that are the bases for the sodomy offenses of which defendant was found

---

1. References to statutes are to RSMo 1986 unless otherwise stated.

2. Defendant testified that H.S.'s mother is his mother's "third cousin."

guilty occurred between June 1 and "the middle of July." The record is unclear as to which occurred first. The offenses were committed at the residence of a neighbor of R.O. (the first incident) and at a used car lot (the second incident).

The first incident occurred after defendant had gone to R.O.'s residence for dinner. R.O.'s neighbor, Irene, was also there. R.O. discovered that she had no bread. Irene gave defendant keys to her house and asked him to go there, get a loaf of bread, and bring the bread to R.O.'s house. When defendant started to leave R.O.'s house, H.S. wanted to go with him. Defendant got permission from R.O. to take the child with him.

R.O. testified that H.S. first told her about the actions of defendant "about eight weeks" after the time the incidents had occurred. R.O. explained, "She just out of the blue mentioned it."

H.S. testified:

Q. Were you with Glenn over at Irene's house one day last summer?

A. (Witness nods head)

Q. Can you say one or the other? You nodded your head yes?

A. Yeah.

Q. Okay. Did something happen over there last summer?

A. (Witness nods head)

Q. Tell me what happened over there?

A. He bothered me.

Q. He bothered you?

A. (Wintess [sic] nods head)

Q. What did he do exactly?

A. He stuck his finger up in my "wee-wee".

. . . . .

Q. Did it ever happen any place else?

A. At the car lot.

Q. At the car lot?

A. (Witness nods head)

Q. Were you alone with him at the car lot?

A. (Wintess [sic] nods head).

Q. Where was your mommy then?

A. In, in—Outside looking at cars.

With respect to the second incident, R.O. testified:

Q. And were you looking to purchase a car this summer?

A. Yes, I was.

Q. And were you at a local car lot?

A. Yes, I was.

Q. Which car lot was that, do you remember, or where was it?

A. Pleasant Auto Sales, I believe is the name of it.

. . . . .

Q. And was Mr. Boyer with you?

A. Yes, he was.

Q. Were they alone on that occasion for any period of time?

A. Yes, they were, because [H.S.] had fallen asleep. I left her in the car with Mr. Boyer while my oldest daughter and I looked at a car.

After H.S. told her mother about the incidents, her mother reported them to the Division of Family Services (DFS) and had H.S. examined by a physician. A DFS worker, Yuriko Stratton, interviewed H.S. The interview was recorded and subsequently transcribed. Ms. Stratton testified that she used anatomically correct dolls in interviewing H.S. She explained that H.S. pointed to body parts of the dolls in responding to questions about what had occurred.

The physician who examined H.S. was Dr. Claudia Preuschoff, M.D., a pediatrician. Dr. Preuschoff was called as a witness by defendant. She testified that her examination of H.S. revealed no abnormalities. Her examination of H.S. occurred several weeks after the dates of the incidents upon which the criminal charges were based. Dr. Preuschoff testified, on cross-examination, that after that amount of time, she would not have expected to find physical evidence of sexual abuse. Dr. Preuschoff also testified that she had taken a medical history from H.S. that was recorded in the medical records she maintained. Those medical records were admitted in evidence. Notes included in the records reflect the following exchange between H.S. and Dr. Preuschoff:

"has anybody ever touched you down there—(pointing to genitalia)

—yes

—who

—glenn

—what did he do

—he put his fingers there

—what did he do [with] his fingers?

—don't know

—did he hurt you

—yes

—where

—(point to genitalia).

■ Defendant's first point on appeal alleges that the trial court erred in admitting out-of-court statements made by the child to R.O., Yuriko Stratton, and Dr. Preuschoff. Defendant alleges that the statute pursuant to which the statements were admitted into evidence, § 491.075, is unconstitutional in its application to this case.

Section 491.075, in pertinent part, states:
1. A statement made by a child under the age of twelve relating to an offense under chapter 565, 566 or 568, RSMo, performed with or on a child by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings in the courts of this state as substantive evidence to prove the truth of the matter asserted if:

(1) The court finds, in a hearing conducted outside the presence of the jury that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(2) The child either:

(a) Testifies at the proceedings; or

(b) Is unavailable as a witness.

.    .    .    .    .

4. Nothing in this section shall be construed to limit the admissibility of statements, admissions or confessions otherwise admissible by law.

As the brief filed on behalf of defendant acknowledges, this statute has been held to be facially constitutional. *State v. Wright,* 751 S.W.2d 48, 52 (Mo. banc 1988). Defendant does not question that determination, but complains that the application of § 491.075.1 to the facts of this case is unconstitutional. In the argument portion of his brief, defendant obliquely talks in terms of this statute's variances from "traditional" exceptions to hearsay and of "particularized guarantees of trustworthiness" of out-of-court statements. Defendant's brief argues that the operation of § 491.075, under the facts of this case, "infringed on [defendant's] fundamental constitutional guarantee to confrontation of witnesses."

Although defendant acknowledges that the child, H.S., testified at trial and was subjected to cross-examination, he erroneously concludes that his constitutional right to confrontation was not satisfied. *Kentucky v. Stincer,* 482 U.S. 730, 737, 107 S.Ct. 2658, 2663, 96 L.Ed.2d 631 (1987), addressed the Sixth Amendment right to confrontation. In that case the United States Supreme Court divided "Confrontation Clause cases" into two broad categories ("albeit not exclusive"). Those categories are (1) cases involving the admission of out-of-court statements, and (2) cases involving restriction on the scope of cross-examination imposed by law or by a trial court. *Id.* The first category, i.e., admission of out-of-court statements, is the aspect of the Confrontation Clause that is in issue in this case.

In *Stincer* the court stated:

In the first category of cases, the Confrontation Clause is violated when "hearsay evidence [is] admitted as substantive evidence against the defendan[t]," with no opportunity to cross-examine the hearsay declarant at trial, .... In *California v. Green* [399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970)], the Court concluded that the Confrontation Clause was not violated by admitting a declarant's inconsistent out-of-court statement "as long as the declarant is testifying as a witness and subject to full and effective cross-examination" at the trial itself. [Citations omitted].

*Id.* at 737–38, 107 S.Ct. at 2663. Or, as stated at l.c. 739, 107 S.Ct. at 2664, "Although claims arising under the Confrontation Clause may not always fall neatly into

**136** ■ ▬▬▬▬▬▬▬▬▬

one of these two categories, these cases reflect the Confrontation Clause's functional purpose in ensuring a defendant an opportunity for cross-examination."

In this case, H.S. testified at trial and was subjected to cross-examination. Her testimony was consistent with the content of the out-of-court statements that were admitted in evidence and were attributable to her. By reason of H.S. having testified and having been cross-examined, the admission of the out-of-court statements into evidence was not a violation of defendant's Sixth Amendment right of confrontation. Although defendant also cited a provision of the Missouri Constitution that affords similar protections, Mo. Const. art. I, § 18(a), defendant does not claim that any greater protection is afforded by it than is afforded by the Confrontation Clause of the Sixth Amendment. In *State v. Jackson,* 495 S.W.2d 80, 83 (Mo.App.1973), it was acknowledged that the protections of the Sixth Amendment extend to criminal proceedings in the state courts via the Fourteenth Amendment. In *Jackson,* the court said, with respect to the Sixth Amendment right of confrontation, "This same right is protected by the Constitution of Missouri, 1945, in Article I, Section 18(a)."

■ Defendant has not asserted, in the argument portion of his brief, any further basis for that part of the first point on appeal that alleges that the operation of § 491.075 violated his "fundamental rights ... to equal protection of the law, and to a fair trial, in violation of the Fifth, ... Amendments to the United States Constitution, and Article I, Sections 2, [and] 10 ... of the Missouri Constitution." Having failed to pursue and develop those allegations in the argument portion of his brief, defendant has abandoned or waived them on appeal. *State v. Franks,* 685 S.W.2d 845, 849 (Mo.App.1984). Defendant's first point is denied.

■ For his second point on appeal, defendant contends that the trial court erred in admitting out-of-court statements made by H.S. to R.O. and to Yuriko Stratton. He argues that the statements that were made by H.S. to R.O. and to Yuriko Stratton "lacked the necessary indicia of reliability needed under Section 491.075" with respect to time, content and circumstances. Specifically, with respect to out-of-court statements made by H.S. to R.O., defendant complains that the statements were made "when the alleged victim was 'exploring her anatomy,' and [were] inconsistent with the alleged victim's testimony at trial." As to statements made by H.S. to Yuriko Stratton, defendant complains that "witness Stratton was not specific as to the procedure utilized to elicit statements from the alleged victim, was initially conducted with the alleged victim's mother present, and was obtained ... in less than one hour." Defendant then claims the same constitutional violations as were raised in the first point on appeal, viz., that the admissions into evidence of the out-of-court statements made by H.S. to R.O. and to Yuriko Stratton "violated [defendant's] constitutional rights to confrontation of the witnesses and evidence against him, to equal protection of the law, to due process of law, and to a fair trial as guaranteed under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 2, 10 and 18(a) of the Missouri Constitution."

As determined with respect to defendant's first point on appeal, for the reasons previously given, defendant's Sixth Amendment right to confrontation (together with the corresponding right under Mo. Const. art. I, § 18(a)) was not violated in the trial of this case. Defendant's reassertion of that issue in his second point on appeal needs no further discussion. Likewise, defendant's complaints that the trial court's findings violated his Fifth and Fourteenth Amendment rights of equal protection of the law and of due process of law, and of state constitutional guarantees embodied in Mo. Const. art. I, §§ 2 and 10, having not been pursued or developed in the argument portion of his brief, require no further constitutional assessment. *State v. Franks, supra.*

The remaining assertions in defendant's second point on appeal are complaints

about the factual findings made by the trial court. The trial court found, as required by § 491.075.1, that the time, content and circumstances of the out-of-court statements made by H.S. to R.O. and to Ms. Stratton provided sufficient indicia of reliability to permit the statements to be admitted as evidence. The issue to be determined in deciding defendant's second point on appeal is whether the trial judge's findings in this court-tried case were supported by substantial evidence. *State v. Giffin, supra.*

The transcript of the testimony of R.O. reveals that the following questions were asked and answers given:

Q. [By the prosecuting attorney] Do you know what prompted her to tell you what happened, to make her tell you?

A. [By R.O.] No. She just out of the blue mentioned it.

Q. Uh-huh.

A. She was sitting on her pottie [sic] chair at her grandmother's house and she mentioned it. Then she told me about it and she said Mr. Boyer had—

At this time the attorney for defendant posed an objection. Following a discussion between the attorneys and the judge with respect to the objection, the inquiry continued.

Q. You say she was on the pottie [sic] chair when she made her first statement?

A. Yes.

Q. And as children want to do, I guess she was kind of exploring her anatomy an[d] that's how the subject came up?

A. I wouldn't necessarily say that. Maybe it just made her think about it, yeah.

Q. What did she exactly tell you when she started telling you about the situation about what had happened?

A. She said that Mr. Boyer had put two fingers into her vagina. Of course, she didn't say vagina. She calls it her "wee-wee". She said he had put two fingers in her "wee-wee" at the car lot and at [Irene's] home. He had laid her on the couch and put two fingers in her.

Q. When you left her at the car lot she was laying down in the backseat; is that correct:

A. She was asleep.

Q. Had anything like this happened to anybody else that she was aware of or could she have heard about this sort of activity somewhere else? Was there anything else that you are aware of?

A. No.

A review of the trial transcript does not lend support to the assertion in defendant's second point on appeal that the out-of-court statement made to Ms. Stratton during an interview with H.S. "was initially conducted with the alleged victim's mother present." The prosecuting attorney inquired of Ms. Stratton as follows:

Q. On August 1st, 1989, who all was present at that time?

A. In the beginning [H.S.] and her mother and then I asked her mother, [H.S.'s] mother, to leave the room and then I talked to [H.S.] alone.

Q. So, you talked to her one on one?

A. Yes.

The fact that H.S.'s mother brought H.S. to the room where Ms. Stratton was to interview H.S., conversed with Ms. Stratton, then departed that room in order for Ms. Stratton to talk to H.S. alone, lacks significance.

Ms. Stratton also testified:

Q. As it concerns Mr. Boyer, did she mention him in your interview?

A. Yes.

Q. And did she tell you about any incidents?

A. Conversation was how [H.S.] indicated Glenn Boyer had touched her vagina. She called her vagina area her "wee-wee".

Q. Did she demonstrate that to you with those dolls?

A. She pointed with two fingers, pointed on the doll.

Q. What did she say to you when she did that?

A. She said Glenn Boyer touched with two fingers her vagina area.

Q. Did she indicate whether or not it hurt or was uncomfortable or anything?
A. She said it did hurt.

. . . . .

Q. Did you question her and try to establish a time of these occurrences?
A. Huh, [H.S.] told me that it happened at Irene's house and once at the car lot when her mother was looking for a car.
Q. Okay. And, huh, did she make any statements to you about what Mr. Boyer had told her about it?
A. I asked her if he said anything and she said don't tell.
Q. So, she advised you that he told her not to tell?
A. Uh-huh.

Defendant places considerable emphasis on the fact that H.S.'s statements to R.O. and to Ms. Stratton occurred eight weeks after the incidents to which those statements pertain. He urges that this amounts to an "extended time period between the alleged acts of abuse" and argues that this time span "is a critical component of a finding of reliability since the elapsed time poses a greater possibility that this information was not trustworthy." In *State v. O'Dell*, 787 S.W.2d 838, 840 (Mo.App.1990), the victim, a child, in a sexual molestation case did not tell his mother of the incident that occurred in December 1986 until February 11, 1987. The child's mother, nevertheless, was permitted to testify pursuant to § 491.075. "Section 491.075.1(1) accords the trial court discretion to determine whether the time, content and circumstances of a child's statement provide sufficient indicia of reliability to justify its admission into evidence." *State v. Potter*, 747 S.W.2d 300, 305 (Mo.App.1988). The fact that the trial court permitted R.O. and Ms. Stratton to testify pursuant to § 491.075 based upon statements that the child related to them more than eight weeks after the incidents occurred was not an abuse of discretion.

The evidence at trial disclosed that the initial statement by H.S. to her mother, R.O., was spontaneous. That statement and the later statement made by H.S. to Ms. Stratton, the DFS worker, were made in environments that were not threatening. When H.S. made the statement to R.O., the two of them were at H.S.'s grandmother's house. Only H.S., R.O., and the grandmother were present. When H.S. made the statement to Ms. Stratton, notwithstanding defendant's contrary claim, only H.S. and Ms. Stratton were present in the interview room. Defendant has not shown that either statement was coerced or the product of leading questions. And, finally, the trial testimony of H.S. was consistent with reported out-of-court statements. The trial judge made the findings required by § 491.075.1. Those findings were that the time, content and circumstances of the statements made by H.S. to R.O. and to Ms. Stratton provided sufficient indicia of credibility to permit the out-of-court statements to be admitted as evidence. Those findings were supported by substantial evidence. Defendant's second point is denied.

■ For his third point on appeal, defendant seeks plain error review of a claim that contents of medical records of Dr. Preuschoff that recited out-of-court statements by H.S., admitted in evidence, and testimony of Dr. Preuschoff and of Yuriko Stratton about the out-of-court statements made to each of them by H.S. were inadmissible for the reason that the medical records and the testimony of those witnesses bolstered the prior testimony of H.S. Defendant also claims Dr. Preuschoff's testimony, given as cross-examination during defendant's evidence, bolstered prior testimony given by Ms. Stratton. Defendant concedes that no objection, on this basis, was made at trial. He argues, however, that the evidence created a manifest injustice and that he was thereby prejudiced.

The issue of whether the admission of testimony which tends to bolster the testimony of a child victim of sexual abuse constitutes plain error has been decided in a number of Missouri cases. *See, e.g., State v. Wright*, 751 S.W.2d 48 (Mo. banc 1988); *State v. Harper*, 778 S.W.2d 836 (Mo.App.S.D.1989). "Absent a proper objection, the admission of evidence which may have the effect of 'bolstering' the testimony of a child victim is not

plain error." *Harper*, at 839; *see also Wright*, 751 S.W.2d at 53.

*State v. O'Dell, supra*, at 841. Defendant's third point is denied.

For his fourth point on appeal, defendant claims the trial court erred by denying the motion for judgment of acquittal at the close of all the evidence on the offense of sodomy. He contends that the evidence presented was insufficient as a matter of law to prove his guilt.

Defendant was found guilty of two counts of sodomy in violation of § 566.060.3. That statute states: "A person commits the crime of sodomy if he has deviate sexual intercourse with another person to whom he is not married who is less than fourteen years old." Deviate sexual intercourse is defined in § 566.010.1(2) as "any sexual act involving the genitals of one person and the mouth, tongue, hand or anus of another person."

There was evidence presented to the trial court, and previously discussed herein, sufficient for that court to have found, beyond a reasonable doubt, that defendant committed the offenses of sodomy as identified in § 566.060.3, as to both incidents for which defendant was found guilty, i.e., the first incident at Irene's house and the second incident in the automobile at the car lot where defendant stayed with H.S. while R.O. and another daughter looked at cars. There was sufficient evidence for the trial court to have found, on both occasions, that defendant committed the sexual act of inserting his hand (his fingers) inside the vagina of H.S., a person less than fourteen years old to whom defendant was not married, thereby committing sexual acts involving the genitals of one person and the hand of another. Defendant's fourth point is denied.

The judgment and sentence are affirmed.

FLANIGAN, C.J., and SHRUM, J., concur.