STATE of Missouri, Respondent,

v.

Edward Allen WHITTLE, Appellant.

No. WD 43550.

Missouri Court of Appeals,
Western District.

July 16, 1991.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 27, 1991.

W. Keith Currie, Jefferson City, for appellant.

William L. Webster, Atty. Gen., Joseph P. Murray, Asst. Atty. Gen., Jefferson City, for respondent.

Before KENNEDY, P.J., and FENNER and BRECKENRIDGE, JJ.

KENNEDY, Presiding Judge.

Appellant was convicted upon jury trial on the charge of first-degree sexual assault in violation of § 566.100, RSMo 1986. Following the jury's recommendation, the court sentenced appellant to a five-year term of imprisonment. He has appealed to this court and raises the following three

allegations of error: (1) that the trial court erred in failing to grant his motion to suppress his confession because it was not freely and voluntarily made; (2) that the evidence was insufficient to support the verdict; and (3) that the trial court erred in allowing into evidence out-of-court statements about the alleged crime made by the victim to his mother.

### I.

We consider first appellant's argument that the trial court erred in overruling his motion for judgment of acquittal because "the evidence presented at trial was insufficient to show that appellant committed the acts as charged, or that the evidence never clearly showed the place nor the time the alleged acts occurred." In deciding this issue, we consider the evidence and all reasonable inferences supportive of the verdict in the light most favorable to the verdict, and disregard those portions of the record contrary to a finding of guilt. *State v. D.A.R.*, 752 S.W.2d 910, 913 (Mo.App. 1983); *State v. Seeger*, 725 S.W.2d 39, 40 (Mo.App.1986). We will not weigh the evidence nor determine the credibility of the witnesses. *State v. D.A.R.*, 752 S.W.2d at 913. The test is whether the evidence, so viewed, was sufficient to make a submissible case from which rational jurors could have found beyond a reasonable doubt that appellant was guilty. *Id.; State v. Seeger*, 725 S.W.2d at 40.

■ Viewed in that light, the evidence establishes that sometime in September of 1987, D.G., a three-year-old boy, was taken to a cabin which belonged to appellant's father. In an upstairs bedroom, appellant pinched D.G.'s penis on the outside of his pants, removed the victim's pants and again fondled him. Appellant then instructed the boy to take his penis into his mouth, which D.G. did.

Two years later, on August 23 or 24 of 1989, D.G.'s mother was called by D.G.'s babysitter and asked to come to the babysitter's home in order to discuss something unusual which had happened with D.G.[1]

---

1. D.G. was found simulating oral sex with another boy at the home of D.G.'s and the other child's babysitter. This was not disclosed to the

When D.G.'s mother arrived at the babysitter, she asked D.G. where, and from whom, he had learned the unusual behavior. D.G. told his mother that a man showed him. D.G. then described the man to his mother. From the description, D.G.'s mother knew that D.G. was referring to the appellant.

One week later, on August 30, 1989, appellant was taken into custody and questioned by Deputy Sheriff Les Jobe about what D.G. had told his mother. On the way to the sheriff's office and again before the questioning began, Deputy Jobe informed appellant of his Miranda rights. During the first session of questioning, which lasted from 12:15 a.m. until 2:50 a.m., appellant stated that he believed the incident could have occurred, but could not remember when or where. Deputy Jobe asked appellant if the incident had occurred, "what type of contact or behavior would have occurred between he and [D.G.]." Appellant stated that he would have fondled D.G.'s genitals, would have had D.G. fondle his genitals, would have had D.G. place his mouth on appellant's penis and would have rubbed his penis on D.G. After the interview, appellant signed a written voluntary statement stating that, "it's possible I could have done it ... but I can't recall it happening."

After being allowed to sleep the remainder of the night, appellant was interviewed a second time. At approximately 10 a.m., appellant, after again receiving his Miranda rights, was interviewed again by Deputy Jobe, who was accompanied by Richard Lee, investigator for the Cole County Prosecutor's Office. At approximately 11:45 that morning, appellant made a second statement admitting that he had sexual contact with D.G.—that he fondled and pinched D.G.'s penis and instructed D.G. to suck his penis. Appellant later wrote, signed and dated a statement admitting that these acts occurred.

Appellant argues that "there is no way that the State showed beyond a reasonable doubt that the Appellant committed the crime as charged." We disagree. The evidence produced by the State was evidence from which rational jurors could have found beyond a reasonable doubt that appellant was guilty. *See State v. D.A.R.,* 752 S.W.2d at 913–14; *State v. Bagby,* 734 S.W.2d 518, 520 (Mo.App.1987). The State is not required to conclusively establish guilt nor exclude every hypothesis of innocence. *State v. Overkamp,* 646 S.W.2d 733, 737 (Mo.1983). We hold a submissible case was made and the trial court did not err in failing to grant acquittal for appellant.

## II.

Appellant's next allegation of error is that the trial court erred in failing to grant his motion to suppress his confession because the statements were not freely and voluntarily made. Appellant argues that he was not properly advised of his Miranda rights prior to making the statements, that he did not voluntarily waive his rights and that the statements were made as a result of undue pressure, influence and duress.

 Once the admissibility of a statement or confession has been challenged, the burden of proving that it was voluntarily made falls upon the State, which must show voluntariness by a preponderance of the evidence. *State v. Weems,* 800 S.W.2d 54, 56 (Mo.App.1990). "The test for 'voluntariness' is whether under the totality of the circumstances defendant was deprived of a free choice to admit, to deny, or to refuse to answer, and whether physical or psychological coercion was of such a degree that defendant's will was overborne at the time he confessed." *State v. Lytle,* 715 S.W.2d 910, 915 (Mo. banc 1986). That there is evidence from which the trial court could have arrived at a contrary conclusion is immaterial. *Id.* at 915–16. When reviewing a trial court's ruling on a motion to suppress, the inquiry is limited to whether the court's decision is supported by substantial evidence, and deference is given to the trial court's superior opportunity to determine credibility of witnesses. *State v. Feltrop,* 803 S.W.2d 1, 12 (Mo. banc 1991).

jury except as "some activities he was engaging in" and as "unusual" behavior.

■ Appellant argues that he was emotionally upset, that he was threatened by the police, and that his father wished to obtain counsel but was dissuaded by Deputy Jobe. The record shows appellant was informed of his Miranda rights before both sessions of questioning. At the suppression hearing, appellant testified that at the time of his interrogation he was aware of his Miranda rights and chose to speak to the police. Investigator Lee testified at trial that he made no promises or threats in order to induce appellant into making a statement. Deputy Jobe testified that he did not dissuade appellant's father from obtaining counsel for appellant. Conflicts in the evidence are for the trial court to resolve and we defer to the trial court's superior position from which to determine credibility. *State v. Lytle*, 715 S.W.2d at 915.

Appellant also makes much of the fact that he was awakened at midnight and questioned until 3 a.m. The record shows that appellant was allowed to sleep from 3 a.m. until approximately 8 a.m., that he was allowed to use the bathroom when he wished, and that he was given breakfast. This does not constitute coercive police activity that allows a finding that the confession was not voluntary.

We hold that there is sufficient evidence to sustain the trial court's finding that the statement was voluntarily made. Under the totality of the circumstances, it was reasonable for the trial court to conclude that appellant's confession was voluntary. The trial court did not err in admitting the challenged confession.

### III.

Appellant's final contention of error alleges that the trial court erred in allowing into evidence out-of-court statements about the alleged crime made by the victim to his mother. Appellant alleges that it was error to allow the statement, which came into evidence through the testimony of the victim's mother, because no sufficient indicia of reliability was shown in that: "[t]he statement was made approximately two and one-half years after the alleged occurrence; the alleged victim was approximately three years old at the time of the alleged occurrence; and at no point did the alleged victim clearly identify appellant."

This argument implicates § 491.075, RSMo 1986. Section 491.075[2] allows the admission, as substantive evidence, of an out-of-court statement made by a child who is an alleged victim of an offense under chapter 565, 566 or 568. If the court finds in a hearing conducted outside the presence of the jury that the time, content and circumstances of the statement provide sufficient indicia of reliability, the statement can be admitted as substantive evidence. Section 491.075; *State v. Hooker*, 791 S.W.2d 934, 935 (Mo.App.1990).

**2.** Section 491.075 provides:

Statement of child under twelve admissible, when—

1. A statement made by a child under the age of twelve relating to an offense under chapter 565, 566 or 568, RSMo, performed with or on a child by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings in the courts of this state as substantive evidence to prove the truth of the matter asserted if:

(1) The court finds, in a hearing conducted outside the presence of the jury that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(2) The child either:

(a) Testifies at the proceedings; or

(b) Is unavailable as a witness.

2. Notwithstanding subsection 1 of this section or any provision of law or rule of evidence requiring corroboration of statements, admissions or confessions of the defendant, and notwithstanding any prohibition of hearsay evidence, a statement by a child when under the age of twelve who is alleged to be a victim of an offense under chapter 565, 566 or 568, RSMo, is sufficient corroboration of a statement, admission or confession regardless of whether or not the child is available to testify regarding the offense.

3. A statement may not be admitted under this section unless the prosecuting attorney makes known to the accused or his counsel his intention to offer the statement and the particulars of the statement sufficiently in advance of the proceedings to provide the accused or his counsel with a fair opportunity to prepare to meet the statement.

4. Nothing in this section shall be construed to limit the admissibility of statements, admissions or confessions otherwise admissible by law.

The trial court, pursuant to § 491.075, held the requisite hearing concerning the admissibility of the victim's statement made to his mother. The victim's mother testified as follows:

Q. [By the prosecuting attorney] Did you have a conversation with [D.G.] around the 23rd or 24th of August of this past year?

A. Yes, I did.

Q. And how did you happen to go have that conversation?

A. My baby—his babysitter caught him with another little boy and called me at work, and so I went out there and talked to him about it.

Q. And where did the conversation take place?

A. It took place in her son's bedroom.

Q. Okay. And was that—that was at your babysitter's house?

A. Uh-huh.

Q. Was there anyone else in the room at the time?

A. I don't think Margorie was in the room. I think she was out in the hallway. I'm not—I think she was out in the hallway. I'm not—I don't—I don't think she was in the room, but I'm not real sure.

Q. Did he make any statements to you as to where he learned this behavior?

A. Yes, he did.

Q. What did he tell you?

A. He told me that a man—well, I said, you know, I said, "Where did you learn this?" And I said, "Did somebody teach you this?"

And he said, "Yes. A man." And I said, "Do you know his name?"

And he said, "No, I don't." And I said, "Well, honey, where did it happen?" And he said, "At his house."

And I said, "What does he look like?" And he stood up on the—they have a little twin bed and he stood up and said, "He's about this tall and he's got red curly hair."

And I think he said he had wrinkles on this face; and I said, "Wrinkles?" And he said, "You know, those little dots."

And I said, "You mean freckles?" And he said, "Yes," and I said, "Is there anything else?" And I said what—and he says, "He's got a brother who's tall and skinny with black hair and he laughs funny," and I knew—I knew then who it was.

Q. Did you give that information over to the police, that you knew those people?

A. Yes.

Q. Did he make any statements to you with regard to what happened?

A. Yes, he did.

Q. Did he make any statements to you with regard to any touching that Eddy, the defendant, might have done?

A. Yes he did.

Q. What did he tell you?

A. He told me that he pinched his dingy and that it hurt.

Q. And was this made at the same time?

A. Yes, it was.

■ We first address appellant's argument about the time span between the crime and the statements made by the victim to his mother. Appellant argues that two and one-half years elapsed between the time of the alleged crime and the time of the statements. Appellant, however, has miscalculated the lapse of time. Our reading of the record in this case indicates that the crime occurred in September of 1987 and the victim told his mother about the crime on August 23 or 24 of 1989, resulting in a lapse of just under two years between the crime and the statements.

There is no per se rule—nor does appellant so contend—which invalidates a statement made two years after the alleged crime. Appellant cites cases which involved a relatively short span of time between the crime and statements concerning the crime and argues that the longer span of time in this case "would tend to raise many questions about the reliability of the statements." In *State v. O'Dell*, 787 S.W.2d 838, 840 (Mo.App.1990), the court

allowed into evidence, pursuant to § 491.-075, statements that were made more than 13 months after the molestation occurred. In *State v. Boyer*, 803 S.W.2d 132, 138 (Mo.App.1991), statements made eight weeks after the crime were admitted into evidence. Allowing the testimony in this case about statements that were made approximately two years after the crime was not an abuse of discretion.

"Section 491.075.1(1) accords the trial court discretion whether the time, content and circumstances of a child's statement provide sufficient indicia of reliability to justify its admission into evidence." *State v. Potter*, 747 S.W.2d 300, 305 (Mo. App.1988). Despite some minor inconsistencies and other matters going to the weight to be accorded the declarations, an examination of the statements indicates the main facts were vivid in the child's memory, and were of a sort not likely to be fabricated by a young child.

The trial court found, pursuant to § 491.-075, that the time, content and circumstances of the out-of-court statements made by the victim to his mother provided sufficient indicia of reliability. Those findings were supported by substantial evidence.

Judgment affirmed.

All concur.