**380**

STATE of Missouri, Respondent,

v.

Robert Larry TIDWELL, Appellant.

No. WD 37719.

Missouri Court of Appeals, Western District.

Jan. 20, 1987.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 3, 1987.

Application to Transfer Denied April 14, 1987.

Joseph H. Locascio, Sp. Public Defender, Mark G. Camacho, Asst. Sp. Public Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

Before PRITCHARD, P.J., and KENNEDY and LOWENSTEIN, JJ.

PRITCHARD, Presiding Judge.

By the verdict of a jury, appellant was found guilty of robbery in the first degree, § 569.020, RSMo 1978, and of armed criminal action, § 571.015, RSMo. He was sentenced, respectively to 30 years and to life imprisonment in the Division of Corrections, to run consecutively.

The sufficiency of the state's evidence is not questioned. Suffice it to say that on May 21, 1985, the Midway Pharmacy, 303 Blue Ridge, Independence, Missouri, was robbed by two men, one of them using a gun. The pharmacist, George Underwood, and his niece, Denise Underwood, were able to observe appellant during the robbery and identified him during the trial.

The first point presented is that the trial court erred in overruling the motion for new trial because the jury foreman, Galen Young, failed to disclose information on voir dire examination which affected appellant's right to make intelligent use of his peremptory challenges. The state inquired of the panel whether anyone or anyone close to them had been a victim of a robbery. Two, other than Young, responded. No venire person responded to a further question of whether anyone had been a victim of any type of crime. Appellant's counsel then asked if any member had been a victim of a burglary, and Young responded that his home had been burglarized in 1981 when he was not home, but there was nothing about that fact which would make it hard or difficult for him to sit on the jury and give both sides a fair trial. There was no response to a question as to whether anyone had strong feelings about guns or the use of them in our society which would make it difficult for them to remain fair and impartial.

Then, after the trial, a conversation was had between Young and three lawyers from the Public Defender's office, in the courthouse elevator and behind the courthouse. According to Public Defender law clerk, Robert McNemar, Young then stated that he would never forget the faces of the S.O.B.s who pointed weapons at him on two prior occasions, but he thought that was irrelevant when asked earlier, intimating that he made a conscious decision that it was irrelevant. On cross-examination, McNemar testified that Young did not say he intentionally concealed the matter in voir dire.

Young refused to sign an affidavit presented to him on behalf of appellant, but did sign a lengthy one which was presented in the hearing on the motion for new trial. He stated that the two prior situations did not even come into his mind at the time of the question on voir dire.

The first occurred 17 years ago when he was with an individual who became verbally abusive toward another person, and Young heard the noise of a sliding action of a .45 caliber weapon coming from the other person's car. The second was a disturbance between a husband and wife. The husband telephoned Young and threatened the wife, and came over with a shotgun in his hands. On neither occasion was anyone injured, the police were not called, and no criminal charges were filed against anyone. Young did not consider that he was the victim on those two times; he did not mention them (during voir dire) because he did not remember them at the time; and there was no intentional concealment of the facts or a willful withholding of vital information.

■■■■ Appellant is correct in maintaining that it is the duty of a prospective juror during voir dire to fully, fairly and truthfully answer all questions directed to him as a member of the panel. However, as was said further in *State v. Jackson*, 412 S.W.2d 428, 432 (Mo.1967), "[T]he question of what result should follow the failure of a juror to correctly answer a question touching his qualifications depends upon whether or not he was guilty of an *intentional* concealment. Primarily, the determination of that question must be left to the sound discretion of the trial court." See also *State v. McGinnis*, 622 S.W.2d 416 (Mo.App.1981); *State v. Gilmore*, 681 S.W.2d 934, 944 (Mo. banc 1984); and *State v. Smith*, 649 S.W.2d 417 (Mo. banc 1983). In this case no intentional concealment is shown, as by an affidavit from the juror. See *State v. Salkil*, 649 S.W.2d 509, 516[9] (Mo.App.1983). Here, Foreman Young did not remember the two prior incidents at the time of voir dire. The questions put to the panel concerned being victims of crimes, and Young was not a victim in either of the two incidents, which he stated caused him to believe they were irrelevant. Although he did not respond to the question as to strong feelings about guns or their use, that question was connected to the further inquiry as to whether that would make it difficult to remain fair and impartial. There was no intentional concealment of

relevant facts here, and the trial court did not err in refusing to grant a new trial on that allegation. Point I is overruled.

Appellant called as an alibi witness his employer, Ray Ridinger. During cross-examination of Ridinger, the state asked a series of questions concerning unemployment compensation, and then asked him if he had provided the gun in this case. Prompt objection was made as being highly prejudicial concerning extrinsic matters, and as having no good faith. That objection was not based upon the state's failure to provide discovery upon the matter, but that contention was contained in appellant's motion for new trial and is here presented. In this situation, the discovery issue will be reviewed under the plain error rule.

Appellant's request for discovery (here paraphrased) included all items of information which in any manner could be expected to aid him in ascertaining the truth of any matter affecting the cause; statements of all persons who have been interviewed by an agent of the state in connection with the subject matter of the cause whom the state does not presently intend to call at trial; the memoranda or summaries of any oral statement made to an agent of the state by any person in connection with the subject matter of the cause, whether if in writing has been signed or approved in writing, or which relates to the proposed subject matter of the direct testimony of the witness at trial; the statements of persons or memoranda or recordings of any oral statement pertinent to the subject matter whether or not made to an agent of the state; and the names and addresses of all persons who may have some knowledge of the facts of the case.

■■■■ These requests would be broad enough to require discovery of matters bearing on the credibility of alibi witness, Ridinger, *if allowable* under discovery Rule 25.03. A reading of that rule shows that the appellant's requests were beyond its scope. It relates to witnesses, documents, transcripts, and other matters which the state intends to introduce as

evidence at trial, including matters which to negate guilt, mitigate the offense or reduce the punishment. Here, nothing is covered as to statements made by persons to an agent of the state and others, which it would introduce at trial. There was, therefore, no onus upon the state, relating to an ongoing investigation of the state as to any implication of Ridinger in a separate criminal action to reveal the requested matters.

This leaves for determination the good faith of the state in asking the question of Ridinger. After the objection was made a lengthy colloquy before the court, outside the jury's hearing, was held in which Mr. Dakopolos informed the court that he had informed state's trial counsel that there was an ongoing investigation with the police department in which Ridinger was involved. He was understandingly reluctant to go into detail because the investigation was in anticipation of future prosecution of Ridinger. He told the court that the investigation received from various witnesses who knew Ridinger had revealed the information to the investigation division. Quite obviously, the state would have had no evidence to contradict Ridinger's denial that he had furnished the gun.

■ A similar situation was in the case of *State v. Charlton,* 465 S.W.2d 502 (Mo. 1971), where the state asked defendant on cross-examination whether he had been convicted of a crime of rape in Kansas, which he denied. The state produced no record of a rape conviction to contradict the denial, but the prosecuting attorney told the court that the question was asked in good faith based upon knowledge supplied by the Kansas State Patrol. The court said, page 503, "Notwithstanding the prosecuting attorney did not produce a record of a rape conviction in form admissible in impeachment of defendant's denial, we may not infer from his failure to produce such a record that the questions were not asked in good faith. (Citing case.) The failure of the State to come forward with record contradiction of defendant's denial had a tendency to injure the State, (citing case), and to redound to the advantage of defendant.

(Citing case.) Reversible error may not be predicated upon the cross-examination under these circumstances." Thus here, it may not be inferred that the question was put to Ridinger in bad faith because state's counsel had information from the prosecutor's office that there was an ongoing investigation implicating Ridinger. Point II, raising these issues, is overruled.

■ On the morning of trial, September 9, 1985, appellant filed a motion for the state to disclose impeaching evidence of prior convictions, stating his desire to testify in his own behalf on his alibi defense and his belief that he had only one prior misdemeanor conviction. The state resisted the motion, correctly on *State v. Smith,* 612 S.W.2d 895, 897[4–6] (Mo.App.1981), which holds that the state is under no duty to disclose prior convictions. The court overruled the motion, appellant testified, admitting a prior conviction of shoplifting in Clay County, Missouri, and on cross-examination, the state confronted him with a question, which he denied, as to a conviction of a Class B misdemeanor in Johnson County, Kansas, for attempting to forge a prescription only drug. Then, on redirect examination, he admitted the Kansas conviction, stating that he did not believe it would be on his record. That subsequent admission absolves the trial court from committing any error, if any there be, in overruling the motion to disclose prior convictions. Point III, on the issue, is without merit, and is overruled.

The judgment is affirmed.

All concur.