**Larry MARTIN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–91–00007–CR.**

Court of Appeals of Texas,
San Antonio.

Nov. 13, 1991.

Nancy B. Barohn, Don Fidler, San Antonio, for appellant.

Steven C. Hilbig, Carol Wilder, Christine Martino, Angela Moore, Criminal District Attorney's Office, San Antonio, for appellee.

Before CHAPA, BIERY and CARR, JJ.

## OPINION

CHAPA, Justice.

Appellant, Larry Martin, was charged by indictment with the offense of Aggravated Sexual Assault of a Child, a first-degree felony. The jury found appellant guilty, whereupon the court denied appellant's application for probation and assessed punishment at seventy-five years' imprisonment.

The dispositive issues are:

1). whether the trial court erred in permitting the State to prejudicially bolster it's own witness; and

2). whether appellant's conviction must be reversed as the State failed to prove one of the essential elements of the crime charged beyond a reasonable doubt.

"It is a well settled rule in this State the prosecution may not bolster or support its own witnesses unless they have been impeached on cross-examination." *Duckett v. State*, 797 S.W.2d 906, 918 (Tex.Crim.App. 1990), citing *Farris v. State*, 643 S.W.2d 694, 696 (Tex.Crim.App.1982). "An unimpeached witness may not be bolstered simply because his or her testimony may be disbelieved; it is only when a witness is placed in a position of having testified differently from earlier testimony that a party will be permitted to bolster its own case." *Duckett*, 797 S.W.2d at 918.

In *Duckett*, the Court of Criminal Appeals found the expert witness's testimony admissible under Texas Rule of Criminal Evidence 704 but emphasized that:

> [t]he situation would be different if the trial court had permitted [the State's witness] to give an opinion whether he believed [the complainant] was telling the truth or could be believed. The latter form of opinion would not only embrace the ultimate issue of whether the child was abused as charged, it would cross the line of *assisting* the trier of fact to *replace* that body as decision maker.

*Id.* at 920 (emphasis in original). The court went on to state that:

> We note again the opinion testimony was of a background and rehabilitative nature, admitted only after some doubt had been cast on the State's theory of prosecution by defense counsel. Since the testimony here did not cross that line in an attempt to decide the issue for the jury and was in the nature of background rehabilitative evidence, the trial judge did not abuse his discretion in admitting the testimony.

*Id.*

Although "expert testimony has been admitted widely for the purpose of explaining general behavior characteristics of child sexual abuse victims," it has been held that:

> ... after the jurors have become familiarized with the typical behavioral traits of the class, there is no need for further expert testimony, through which the expert expresses, *either directly or indirectly*, her opinion as to the credibility of a particular child complainant. It is well settled that a witness may not give an

opinion as to the truth or falsity of other testimony.

*Kirkpatrick v. State,* 747 S.W.2d 833, 836 (Tex.App.—Dallas 1987, pet. ref'd) (emphasis in original). *See also Miller v. State,* 757 S.W.2d 880, 883 (Tex.App.—Dallas 1988, pet. ref'd) (court held that testimony that the complainant was telling the truth was inadmissible.)

■ In the present case, the record reflects [1] that Mary Ann Stamper, a supervisor with the Texas Department of Human Services testified regarding the following:

[PROSECUTOR]: In your 15 years experience over there at the Department of Human Services, have you come into contact with many different victims of sexual, physical abuse, and mental and emotional abuse?

[MS. STAMPER]: Yes, I have.

[PROSECUTOR]: Can you give us any sort of estimate as to how many children under the age of 17 that you have worked with as a caseworker or a supervisor?

[MS. STAMPER]: Well, I would say hundreds. I can't give you an exact figure.

[PROSECUTOR]: All right. *And in your dealings with these children do you use your undergraduate and your guidance and counseling training to determine whether or not children are telling you the truth about cases?*

[MS. STAMPER]: Yes. I also use training that I have received through the department.

The State went on to question the expert witness on her training and, additionally, inquired into the methods utilized by the Department of Human Services in interviewing children which have been, allegedly, sexually abused. The State then focused entirely upon the expert's "role" in determining whether the cases became "open cases, closed cases, founded or unfounded"; ultimately, the State's questioning targeted the expert's ability to determine the complainant's truthfulness in the instant case.

[PROSECUTOR]: I'll ask you, Ms. Stamper, did you have occasion in March and April of 1989 to come into contact with a young woman, a girl, named B_____ G_____?

[MS. STAMPER]: Yes.

[PROSECUTOR]: And what was the nature or the reason that you came into contact with B_____?

[MS. STAMPER]: Well, a referral was called in, and it was assigned to me to investigate.

[PROSECUTOR]: All right. And as a result of that call coming in, the referral being made, what did you do after that to investigate?

[MS. STAMPER]: I contacted the family and requested that they come into the office, and then I interviewed B_____.

[PROSECUTOR]: All right. Do you recall if B_____ came in alone, or if anyone was with her when she came in?

[MS. STAMPER]: No. She came in with her mother.

[PROSECUTOR]: According to your procedure, you said that after you had interviewed the child—and did you interview B_____?

[MS. STAMPER]: Yes.

[PROSECUTOR]: Was she able to tell you of any specific sexual abuse that had occurred to her?

[MS. STAMPER]: Yes.

[DEFENSE COUNSEL]: I'll object to the question as calling for a hearsay response, Your Honor, and not to an outcry.

THE COURT: Sustained.

CONTINUATION BY [PROSECUTOR]:

[PROSECUTOR]: After you interviewed B_____, what did you next do?

[MS. STAMPER]: I discussed my concerns with her mother.

[PROSECUTOR]: All right. And you say you discussed your concerns with her

---

**1.** The record is replete with other instances wherein the State attempted to bolster the testimony of its witness and no objections were lodged. We do not find it necessary to address these incidents, nor is it necessary to address appellant's ineffective assistance of counsel complaint, in view of the error preserved by way of Ms. Stamper's testimony.

mother. How did you categorize this particular case of abuse?

[MS. STAMPER]: Well, she gave me a lot of information. *I felt like she was telling the truth, and that she was a victim.*

[DEFENSE COUNSEL]: Your Honor, I object to that as being non-responsive, an attempt to bolster the witness's credibility.

[PROSECUTOR]: Your Honor, I asked what happened after the interview, and she said the next thing was to talk to the parents to see whether they think the case is founded or unfounded. It's not hearsay. It's just telling us what her general procedure is, and if she believed the child was not telling the truth, she would not have gone on.

[DEFENSE COUNSEL]: I'm objecting to the opinion contained within the response, Your Honor. She had an opinion. She believed the child was telling the truth. That's something that's the province of the jury, not for her to decide.

THE COURT: I overrule the objection.

[PROSECUTOR]: Thank you, Your Honor.

CONTINUATION BY [PROSECUTOR]:

[PROSECUTOR]: You can go ahead and answer. After the response, after you had interviewed—you were talking about with her mom—what did you do?

[MS. STAMPER]: I discussed my findings with her mother, made some recommendations to her mother as to what she needed to do next.

[PROSECUTOR]: And did you consider this case a founded or an unfounded case?

[MS. STAMPER]: Founded.

[PROSECUTOR]: Founded, meaning what?

[MS. STAMPER]: *It means I believe the child was a victim of abuse.*

Clearly, the testimony elicited was an attempt to bolster the complainant's credibility. *Duckett,* 797 S.W.2d at 918. Notwithstanding the testimony by the expert witness which purported to establish scientific background, the ultimate and underlying purpose of Ms. Stamper's testimony was to lend credence to the complainant's testimony and convince the jury that the complainant could be believed. This is precisely the type of situation the Court of Criminal Appeals envisioned when it warned that by permitting the State's witness to give an opinion concerning whether or not he believed the complainant was telling the truth, the expert testimony would "cross the line of assisting the trier of fact to replace that body as decision maker." *Duckett,* 797 S.W.2d at 920. Accordingly, we find that the trial court erred in permitting the State to bolster the complainant's testimony.[2]

█ At oral argument, the State attempted to argue that even if this testimony constituted bolstering, it did so only with respect to the complainant's statement that she was abused, a fact that was clearly undisputed[3]; therefore, the State surmised, it was harmless error.[4] We disagree. From the outset of Ms. Stamper's testimony, the State set the stage for the introduction of this inadmissible testimony. By inquiring as to the expert's ability to determine the truthfulness of the sexually abused children she dealt with, the State made its intentions known. As a result, the jury was clearly sent a message that the complainant was truthful and could be believed. It is illogical to conclude that the jury would somehow limit this message to

---

2. Additionally, we note that appellant properly objected to this testimony based on the nonresponsiveness of the answer.

3. Based upon the physical and medical evidence, there was no doubt that the complainant had been sexually assaulted; however, the sole witness as to the identity of the perpetrator was the complainant and thus, the identity of the perpetrator was disputed.

4. In *Alvarado v. State,* 775 S.W.2d 851, 856 (Tex.App.—San Antonio 1989, pet. ref'd), this court rejected a similar argument by the State that because of the overwhelming evidence of the appellant's guilt, the admission of the improper testimony was harmless beyond a reasonable doubt.

the fact that the complainant was abused and yet, not determine that the complainant was being truthful with respect to her identification of the defendant. The harm incurred is further evidenced by the State's closing arguments:

> Now when we bring experts, we bring them here for a reason because we want you to place your trust in them and what they tell you. That's why we spend time going over this history—what their education is, what they have done in the past, how many people they have seen, so you can place your trust in what they are saying. I am going to ask you to do that. Years of experience accumulated on the part of Dr. Kellogg, on Ms. Stamper, on Ms. McMahon, Ms. Montalvo, and also with Ms. Roper. Years of experience these people bring to you.

Thus, the jury was repeatedly told that the experts could be believed because of their education and experience and consequently, the complainant could also be believed. We fail to see how the error in the present case "made no contribution to the conviction or to the punishment." TEX.R.APP.P. 81(b)(2).

Appellant's point is sustained. However, appellant further asserts that his conviction must be reversed as the State failed to prove one of the essential elements of the crime charged beyond a reasonable doubt. Consequently, we will likewise address this issue.

■ Specifically, appellant contends that the State failed to adduce any evidence to establish that the complainant was not the spouse of appellant. Instead, appellant argues, the State solely proved that the complainant was younger than 17 years of age.

The charge of the court states that "[a] person commits aggravated sexual assault if the person commits sexual assault as defined above and the victim is younger than 14 years of age. 'Child' means a person younger than 17 years of age who is not the spouse of the actor." Thus, the definition of "child" which was incorporated into the charge clearly precluded the possibility of the child being the spouse of the actor. Further, the record reflects the complainant testified with respect to the following: that she lived in a trailer together with her mother, father, brother and sister; that the defendant babysat her and her siblings; that she called the defendant "Nanny" and "Uncle Larry"; and, that Larry's brother, Pat, was married to her mom's sister, Olga. Additionally, the complainant's mother testified that the defendant lived across the street from the complainant's grandmother's house, and that the defendant would stay overnight, occasionally for several days at a time, and "babysit the kids" at their home while she and her husband worked, driving trucks. Finally, there was testimony that the complainant was between the ages of six and nine and a half years old at the time the offense took place.

We find this circumstantial evidence sufficient to establish that the complainant was not the spouse of the defendant. *Meyers v. State*, 737 S.W.2d 6, 8 (Tex.App.—Corpus Christi 1987, no pet.), citing *Wilson v. State*, 654 S.W.2d 465, 467 (Tex.Crim. App.1983).

Appellant's final point of error is refused.

The judgment is reversed and the cause is remanded.

