IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-91-578-CR




JOE ALVIAR, JR.,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE



 




FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT



NO. 40,555, HONORABLE RICK MORRIS, JUDGE PRESIDING



 




 Over a plea of not guilty, the jury found appellant Joe Alviar, Jr. guilty of
aggravated sexual assault. See Tex. Penal Code Ann. § 22.021(a)(1)(B) (1989). The trial court
sentenced Alviar to fifty-years imprisonment. He appeals. We will reverse the judgment of the
trial court and remand the cause for a new trial.



THE CONTROVERSY


 Alviar was indicted and tried for sexually assaulting his niece's daughter, C.A.,
who was six years of age at the time of trial. During the trial C.A. testified that Alviar assaulted
her through both oral and vaginal penetration. She stated a number of times, in response to both
prosecution and defense questions, that she was telling the truth.

 On cross-examination, defense counsel asked C.A. whether she had seen adults
engage in sex, either on television or elsewhere. She replied that she had not. She did, however,
give conflicting testimony about whether a Luis Corona had sexually assaulted her as well. 

 The State elicited testimony from C.A.'s mother, Wendy P., about opportunities
Alviar had to assault C.A. The State also elicited testimony from Dr. Susan Nickel, who had
treated C.A. Dr. Nickel testified C.A. had made an outcry statement accusing Alviar of the
assault. The State then rested.

 Testifying in his own defense, Alviar denied assaulting C.A. He testified C.A. had
once asked him questions about sex because she had seen her mother and stepfather engaging in
sex. Alviar admitted being alone with C.A. several times, but stated repeatedly that she was lying
about the assault.

 Alviar's wife, Rosalinda, also testified for the defense. She stated that she believed
C.A. was lying about the assault. Rosalinda also implied that Wendy had taught C.A. to lie in
order to prevent Wendy's husband from learning about Wendy's relationships with other men.

 The State then called a rebuttal witness, Dr. Christine Svoboda, a psychologist with
experience in treating abused children. Dr. Svoboda had met with C.A. on a weekly basis from
September to November 1991, approximately ten weeks in all. After recounting the effects of
child abuse in general, Dr. Svoboda testified that C.A.'s behavior was consistent with the
behavior of abused children. Dr. Svoboda stated that C.A. complained of sexual abuse by "Uncle
Joe Joe," apparently a reference to Alviar. Dr. Svoboda also testified C.A. added details of the
sexual assault with succeeding therapy sessions, and there were no contradictions from one session
to the next. Dr. Svoboda attributed C.A.'s elaborations on her account of the assault to the
growing trust between doctor and patient. The prosecutor then elicited from Dr. Svoboda the
following testimony, which we have set out at some length because of the importance of the
context of Dr. Svoboda's statements:



Q: The idea that [C.A.] has made all of this up, that this is fantasy on her part,
that she saw it somewheres [sic] else and has divulged it from having seen
it, okay, that type of--that type of defense, from your training and experience,
what do you know about this?


A: Well, there are some cases where victims have fabricated the story, and that
is certainly a possibility in some cases. They are specific kind [sic] of cases
though in terms of the literature when that has happened, and also the child
gives a specific kind of presentation. Okay. That is likely. It's not likely,
but you would be concerned about something like that if it were a custody
hearing, okay, where one parent perhaps is misusing the child in the custody
arrangement.


 Another possibility is if a parent has a very severe psychiatric disorder, a
delusional kind of disorder and they have false beliefs about a number of
things and they tell the child this. The child's presentation, though, is much
different when the information is falsified. They come in and tell the story
completely in kind of an uneffected [sic] flat way without any anxiety
attached to it. And oftentimes because they are children and they are not
particularly--this isn't their story, it's somebody else's story, the facts will
change over time. So I know that there's been a good deal of information
in the literature about falsification of the story. That was certainly not my
assessment in this case.


Q: Okay. What you have seen and observed of [C.A.] the type of situations
where this, a fabrication would exist, you have not seen that at all with
regard to [C.A.]?


A: No, that was never a consideration.


Q: And in the time that you have been able to spend with her there has been a
direct--well, for instance, the Defendant has said that [C.A.] is lying. The
Defendant's wife sat where you are at and said I think [C.A.] is lying.


 What is your opinion from having been with her over this period of time?


[Defense Counsel]: We are going to object to that, your

 Honor, that's nothing but bolstering.


The Court: Overruled.


Q: (By the prosecutor) What is your opinion?


A: I think that her account is factual.


[Prosecutor]: I pass the witness.



(Emphasis added). Based on the foregoing evidence, the jury found Alviar guilty of aggravated
sexual assault. The trial court assessed punishment of fifty-years imprisonment. Alviar appeals.



DISCUSSION


 In his sole point of error, Alviar complains the trial court erred in overruling his
objection that the State improperly bolstered C.A.'s testimony with Dr. Svoboda's opinion
testimony that she was truthful. "Bolstering" occurs when a party improperly uses an item of
evidence to add credence or weight to some earlier unimpeached piece of evidence offered by the
same party. Guerra v. State, 771 S.W.2d 453, 474 (Tex. Crim. App. 1988), cert. denied, 492
U.S. 925 (1989). Alviar argues C.A. was not impeached and therefore bolstering was improper.

 The State responds with three arguments: (1) Alviar did not preserve error because
his objection was not specific enough; (2) C.A. had been impeached on cross-examination and by
the testimony of other witnesses and bolstering was therefore permitted; and (3) even if the
bolstering was improper, the evidence was cumulative because Dr. Svoboda had already testified
without objection that she did not believe C.A. falsified the story. We will examine each of these
contentions.



Preservation of Error


 According to the State, Alviar did not preserve a complaint for appellate review
because he did not state the specific grounds for the ruling he desired from the court. See Tex.
R. App. P. Ann. 52(a) (Pamph. 1992). The State reasons as follows: A party may bolster the
testimony of a witness who has been impeached; C.A. had been impeached by the cross-examination and by the Alviars' testimony; because bolstering in and of itself was not improper
in this case, Alviar had to make a more specific objection that Texas Rules of Criminal Evidence
702 and 704 prohibited the particular type of bolstering employed by the State; Alviar did not
make such an objection, and therefore did not preserve error. See Tex. R. Crim. Evid. Ann. 702,
704 (Pamph. 1992).

 We believe Alviar did preserve error. Texas Rule of Appellate Procedure 52(a)
requires a party to make a "timely request, objection or motion stating the specific grounds for
the ruling he desired the court to make if the specific grounds were not apparent from the
context." Tex. R. App. P. Ann. 52(a) (Pamph. 1992) (emphasis added); see also Lankston v.
State, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992) ("As regards specificity, all a party has to
do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants,
why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him
at a time when the trial court is in a proper position to do something about it."). We conclude the
specific grounds were apparent from the context of the objection. The prosecutor asked Dr.
Svoboda a direct question as to her opinion of whether C.A. was telling the truth. Alviar's
attorney objected that the question was "bolstering," that is, attempting to enhance C.A.'s
credibility by having another witness express an opinion as to whether C.A. was telling the truth.

 The court of criminal appeals approved an objection similar to the one in the
present cause in Moreno v. State, 755 S.W.2d 866 (Tex. Crim. App. 1988). In Moreno, the State
attempted to impeach the defendant with unadjudicated offenses by cross-examining him about
firing guns within his apartment complex. The defendant's attorney objected, "Judge, I object to
this line of questioning. This is going to other acts that are irrelevant to this matter." The court
of criminal appeals held this objection was sufficiently specific to apprise the trial court of the
defendant's objection. Id. at 870. 

 Defense counsel objected to a question directly asking Dr. Svoboda whether she
believed C.A. was telling the truth. Neither the trial court nor opposing counsel could have failed
to grasp that Alviar was objecting to the State's attempt to enhance C.A.'s credibility by the
question directed to Dr. Svoboda. See Lankston, 827 S.W.2d at 911; Black v. State, 634 S.W.2d
356, 358-59 (Tex. App. 1982, no pet.); see also Miller v. State, 741 S.W.2d 382, 387 (Tex.
Crim. App. 1987), cert. denied, 486 U.S. 1061 (1988); Zillender v. State, 557 S.W.2d 515, 517
(Tex. Crim. App. 1977). We conclude Alviar preserved the point of error.



Propriety of Bolstering


 The State may not bolster or support its own witnesses unless they have been
impeached on cross-examination. Duckett v. State, 797 S.W.2d 906, 918 (Tex. Crim. App.
1990). "An unimpeached witness may not be bolstered simply because his or her testimony may
be disbelieved; it is only when a witness is placed in a position of having testified differently from
earlier testimony that a party will be permitted to bolster its own case." Id. Alviar contends
neither the cross-examination of C.A. nor the testimony of other witnesses impeached her. The
State argues C.A. was impeached on cross-examination and by the Alviars' accusations that C.A.
was lying, so bolstering was proper. We must therefore determine whether C.A. was impeached
in order to determine whether the bolstering was improper.

 On cross-examination the following exchange occurred between defense counsel
and C.A.:


Q: Do you remember telling -- Has something like this ever happened to you
before?


A: No.


Q: Do you remember telling one of the doctors about Luis Corona?


A: Yes.


Q: What did you tell them about that?


A: I forgot.


Q: But you did tell them -- But you did tell them something like this
happened with Luis Corona?


A: I can't remember.


 . . . .


Q: And the truth is you did tell the doctor that Luis had done
something like this, didn't you?


A: Yes.


Q: And it happened a long time ago or when?


A: I can't remember.



 On redirect examination, the prosecutor asked C.A.:



Q: Did Luis put his private into your mouth like Uncle Joe did in
yours?


A: No.


Q: Now, anybody else, any other man ever do that to you?


A: No.


Q: Okay. Who is the only person that has put his private in your
mouth and has put his private in your private?


A: Joe.



 Finally, on recross examination defense counsel asked C.A.:



Q: But it is true, isn't it, that you did tell the doctor that Luis did
something like that?


A: Yes.


Q: Okay. And you told the doctor the truth, didn't you?


A: Yes.


 . . . .


Q: As a matter of fact, I think isn't it true that you did tell the doctor
that [Luis] put his private part in your mouth also?


A: (Shrugs shoulder.) I don't know.


Q: Have you forgotten?


A: Yes.


Q: A lot of times we forget things when it's been a long time ago,
doesn't it [sic]?


A: Yes.


Q: Sometimes we don't remember things just like they happened, do
we?


A: Yes.



 Alviar and his wife both testified they believed C.A. was lying about the alleged
sexual assault. Alviar testified C.A. had asked him about sexual acts, whereas C.A. testified she
had never seen adults engage in sex, either at her home or on television. Rosalinda Alviar
testified she believed C.A. made up the accusation about Alviar after witnessing her mother,
Wendy, engage in sex. In argument before the jury, defense counsel conceded C.A. had probably
suffered abuse, but suggested Corona was responsible for that abuse.

 We believe Alviar's defense counsel impeached C.A. Defense counsel's cross-examination elicited contradictory responses from C.A. about previous abuse by Corona. The
cross-examination also exposed an inconsistency between C.A.'s trial testimony and her out-of-court statement to the doctor about previous abuse. Finally, Alviar testified that C.A. questioned
him about sex, indicating she had some knowledge of sex; this at least implicitly contradicted
C.A.'s testimony that she had never seen anyone engage in sexual activity. See Duckett, 797
S.W.2d at 918 (concluding a child was impeached during cross-examination when she gave
inconsistent testimony and became confused and reticent when answering questions); see also
Livingston v. State, 739 S.W.2d 311, 332 (Tex. Crim. App. 1987) (allowing bolstering because
defense counsel "attempted to impeach the testimony" of a witness, or at least "clouded" the
testimony of the witness by cross-examination), cert. denied, 487 U.S. 1210 (1988); Smith v.
State, 595 S.W.2d 120, 126 (Tex. Crim. App. 1980) (allowing bolstering when the testimony of
a witness was "clearly undermined and clouded" by cross-examination).

 Because defense counsel impeached C.A., bolstering was proper. Moreover, Dr.
Svoboda's testimony directly related to the matter on which C.A. had been impeached--her
credibility. See Duckett, 797 S.W.2d at 918 (bolstering testimony must be related to the
impeachment to be admissible). The question remains, however, whether the particular type of
bolstering engaged in by the State was proper. We conclude it was not.

 The court of criminal appeals distinguished between direct and indirect bolstering
in Duckett, 797 S.W.2d at 920. In that case the court approved an expert's recitation of the six 
"elements" of the so-called "Child Sexual Abuse Syndrome" and the expert's application of the
elements to the facts of the case. Id. The court, however, drew a definite line between testimony
which assists the factfinder and that which usurps the role of the factfinder:



Under our interpretation of the rules, such testimony which merely embraces an
ultimate issue is clearly admissible under [Texas Rule of Criminal Evidence 704]. 
The situation would be different if the trial court had permitted [the expert witness]
to give an opinion whether he believed S__ S__ was telling the truth or could be
believed. The latter form of opinion would not only embrace the ultimate issue of
whether the child was abused as charged, it would cross the line of assisting the
trier of fact to replace that body as decisionmaker.



Id. (emphasis in original). The court held the expert's testimony "did not cross the line in an
attempt to decide the issue for the jury" because it was mere background information supplied to
rehabilitate the witness. Id.

 We believe the question the prosecutor asked Dr. Svoboda in the present cause did
"cross the line" of permissible testimony because it falls directly within the type of testimony
disapproved in Duckett. The prosecutor asked Dr. Svoboda her opinion as to whether C.A. was
telling the truth. Over defense counsel's objection, Dr. Svoboda replied, "I think that her account
is factual." This exchange crossed the line from indirect to direct bolstering and was therefore
improper. See Kirkpatrick v. State, 747 S.W.2d 833, 839 (Tex. App. 1987, pet. ref'd) (reversing
and remanding for a new trial because an expert witness testified she believed the child
complainant was telling the truth); Black, 634 S.W.2d at 358 (same); see also Martin v. State, 819
S.W.2d 552, 555 (Tex. App. 1991, no pet.).

 The State argues that, because C.A. was impeached by inconsistent statements and
direct opinion evidence attacking her credibility, opinion testimony bolstering C.A.'s credibility
was proper. According to the State, Dr. Svoboda's opinion that C.A.'s account was factual was
simply a reply to Rosalinda Alviar's opinion that the child was lying. We agree that the State
could bolster C.A.'s credibility by use of an expert witness. The expert witness was obliged to
testify within certain constraints, however. "[T]he use of expert testimony must be limited to
providing knowledge that will assist the jury's rational decision of the issues before it; it cannot
be used to advise the jurors who is telling the truth." Kirkpatrick, 747 S.W.2d at 837. Because
no expert witness is qualified to ascertain credibility, the trial court erred in allowing Dr. Svoboda
to comment directly on the credibility of C.A. See id. at 838.



Cumulative Evidence


 The State argues that any error resulting from improper bolstering was harmless
because Dr. Svoboda had previously testified without objection that she thought C.A. was telling
the truth about the assault. See Tex. R. App. P. Ann. 81(b)(2) (Pamph. 1992). The State
correctly points out that a party must object to the introduction of evidence at the earliest
opportunity. Montelongo v. State, 681 S.W.2d 47, 57 (Tex. Crim. App. 1984); O'Neill v. State,
681 S.W.2d 663, 670 (Tex. App. 1984, pet. ref'd). Improper admission of evidence does not
constitute reversible error if the same facts were proved by evidence to which the appellant did
not object. Brasfield v. State, 600 S.W.2d 288, 296 (Tex. Crim. App. 1980).

 We cannot conclude either of Dr. Svoboda's statements preceding the objected-to
question was a direct comment on C.A.'s credibility, as the objected-to statement was. After
discussing the circumstances in which a child might falsify an abuse accusation and the child's
manner of relating a false story, Dr. Svoboda said, "That was certainly not my assessment in this
case." Although the statement was arguably an opinion of C.A.'s credibility, it could also be
construed as an opinion that the circumstances which prompt false accusations were absent in the
present cause. We do not believe this statement was such a direct comment on C.A.'s credibility
that it relegated Dr. Svoboda's explicit opinion of C.A.'s credibility to the status of cumulative
evidence.

 Nor was Dr. Svoboda's next answer clearly an opinion of C.A.'s credibility. The
prosecutor asked, "What you have seen and observed of C.A. the type of situations where this,
a fabrication would exist, you have not seen that at all with regard to C.A.?" (Emphasis added). 
From the context of the question, the prosecutor was apparently asking Dr. Svoboda whether
C.A.'s circumstances included a custody battle or a parent imposing false beliefs on the child. 
Dr. Svoboda answered, "No, that was never a consideration." An expert witness is allowed to
describe general behavioral characteristics of a child-abuse victim and match those characteristics
with the complainant's behavior patterns as long as the expert does not comment directly on the
credibility of the victim. Duckett, 797 S.W.2d at 915 n.13. We believe the question and answer
served to establish only that the present cause did not present the usual motives for a child to lie. 
If the answer commented on C.A.'s credibility, it did so only indirectly. See id. at 919 (stating
that the court of appeals erred by focusing upon the indirect result of the expert's bolstering
testimony without considering the context in which the testimony was allowed).

 The State urged an identical argument in Kirkpatrick, 747 S.W.2d at 839 n.6. In
that case the prosecutor asked the expert witness, "Are those things that you have mentioned or
that you have observed on counseling with . . . [child complainant] and hearing her story,
watching her reaction, are those things all consistent, based on your training and experience, with
children who have in fact been sexually abused?" The expert answered, "Yes, they are." The
defendant lodged no objection to this exchange, but did object later when the prosecutor asked the
expert "whether or not [the child] is truthful about her claim of sexual abuse." On appeal, the
State argued that no reversible error was present because the prosecutor had elicited the earlier
testimony without objection. 

 The court of appeals rejected the State's argument because it did not believe the
evidence was cumulative: "Our examination of the record reflects that the unobjected inquiry was
merely the opening salvo of an extended line of inquiry. The inquiries as to which appellant made
proper objection cannot be dismissed as `merely cumulative.' The errors asserted by appellant
were preserved and we find them reversible." Id.; see also Morgan v. State, 816 S.W.2d 98, 102
(Tex. App.) (holding that the appellant preserved error even though he did not object immediately
because the comments "did not become blatantly objectionable until the second or third time the
prosecutor made a comment"), pet. ref'd per curiam, 817 S.W.2d 706 (Tex. Crim. App. 1991). 



Harmless-Error Analysis


 Having concluded the trial court erred in allowing Dr. Svoboda to express an
opinion of C.A.'s credibility, we must determine whether the error merits reversal. See Tex. R.
App. P. Ann. 81(b)(2) (Pamph. 1992). In a harmless-error analysis, we must calculate the
probable impact of the error on the jury in light of the existence of the other evidence. (1) Orona
v. State, 791 S.W.2d 125, 130 (Tex. Crim. App. 1990).

 C.A.'s testimony was the only direct evidence adduced tending to show Alviar
assaulted her. Dr. Nickel testified C.A. had suffered vaginal scarring, but that scarring could
be attributed to the alleged abuse by Corona. Both Dr. Nickel and Dr. Svoboda testified C.A.
implicated Alviar in outcry statements, but the reliability of those statements was also dependent
on C.A.'s credibility. 

 Considering C.A.'s inconsistent statements during her testimony and the lack of
corroborating evidence of Alviar's guilt, we believe a juror might place undue weight on Dr.
Svoboda's opinion that C.A.'s account was factual. See Yount v. State, 808 S.W.2d 633, 636
(Tex. App. 1991, pet. ref'd) (motion for rehearing pending); see also Farris v. State, 643 S.W.2d
694, 697 (Tex. Crim. App. 1982). We therefore cannot conclude beyond a reasonable doubt that
the error made no contribution to the conviction. See Tex. R. App. P. Ann. 81(b)(2) (Pamph.
1992).

 We reverse the judgment of the trial court and remand the cause for a new trial.



 

 John Powers, Justice

[Before Justices Powers, Jones and Kidd]

Reversed and Remanded

Filed: August 12, 1992

[Do Not Publish]
1. To calculate the probable impact of the error on the jury, we look to the factors set forth
in Harris v. State, 790 S.W.2d 568 (Tex. Crim. App. 1989): (1) the source of the error; (2)
the nature of the error; (3) whether or to what extent the State emphasized the error; (4) the
error's probable collateral implications; (5) how much weight a juror would probably place on
the error; and (6) whether declaring the error harmless would encourage the State to repeat it
with impunity. Id. at 587. We focus not on the weight of the other evidence of guilt, but
rather on whether the error at issue might have prejudiced the jurors' decisionmaking. Id. at
587-88. In the final analysis, our inquiry is whether the trial was an essentially fair one. Id.
at 588.