STATE of Missouri, Respondent,

v.

Stephen M. McKEE, Appellant.

Stephen M. McKEE, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 17604, 18282.

Missouri Court of Appeals,
Southern District,
Division Two.

July 8, 1993.

Ronald L. Legg, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for respondent.

MONTGOMERY, Presiding Judge.

Defendant was found guilty by a jury of first degree sexual abuse in violation of § 566.100.[1] Found to be a prior offender, the trial court sentenced Defendant to five years' imprisonment. From this conviction and sentence, Defendant appeals in Case No. 17604.

Defendant's amended motion for post-conviction relief under Rule 29.15 was denied by the motion court without an evidentiary hearing. He appeals that ruling in Case No. 18282. We consolidate the appeals for review. Rule 29.15(*l*).

### No. 17604

Defendant does not challenge the sufficiency of the evidence to convict him. Viewed in the light most favorable to the verdict, we relate the following facts. In July of 1990, Defendant and Sharon Cunningham were living with her four daughters in a house owned by Sharon's parents in Stott City, Missouri. Sharon's oldest daughter, S.A.C., age 9, often visited with her maternal grandmother. On one such occasion in August 1990 S.A.C. started "throwing a fit" because she did not want to be picked up by Defendant and her mother. After talking to S.A.C., her grandmother called the Division of Family Services (DFS). That call resulted in S.A.C.'s placement in foster care.

At trial, S.A.C. testified Defendant touched her "in the wrong places" with "his hands and his private place" at "my private spot." S.A.C. demonstrated these acts to the jury with anatomically correct dolls, stating that on this occasion Defendant pulled her shorts and pants down. She testified of a second incident involving Defendant and two other men when her cousin L.C. was also present. She identified the men as Kevin Mee and Gary and stated Mee "did things" to her and L.C. The victim stated she did not tell her mother of the first incident because Defendant threatened to kill her if she told anyone.

While in foster care S.A.C. was counseled by Janice Crane, a counselor with a master's degree in guidance and counseling. She testified as a State witness. Between August 27, 1990, and the trial on May 9, 1991, Crane saw S.A.C. almost weekly. During their first meeting S.A.C. told Crane she had been sexually abused by Defendant, once by herself in Stott City and once with her cousin L.C. Crane testified that S.A.C. told her Defendant "put his privacy on her privacy" and it hurt. Crane stated the victim described another incident where Defendant, with some of his friends, played strip poker in her presence. S.A.C. indicated maybe twenty men participated but later said only four or five men were there. Crane admitted S.A.C. told her some of the men at the strip poker game had placed their penises in hot dog buns with catsup on them.

Dr. John Ferguson examined the victim on October 4, 1990, and found no physical evidence of sexual abuse. However, he qualified his finding by indicating that healing could have occurred within the prior two-month period.

Defendant's first point asserts the trial court plainly erred in allowing Janice Crane to testify of her discussions with S.A.C. concerning the need to be truthful and the victim's understanding of this concept. Defendant urges that Crane's testimony vouched for the credibility of S.A.C. and invaded the province of the jury on that issue.

This point refers to the following testimony:

Q And in [S.A.C.'s] case how did you decide what avenue to take with her particular case, as far as counseling?

A I took an attitude that I would just take with all of the cases.

Q Uh-huh. And what is that?

A I would first try to have her feel safe where she feels she has people to help her, that it would be okay to be honest. That would be the first thing I would do. And then I would work on her not

---

**1.** Statutory references are to RSMo 1986, and rule references are to Missouri Rules of Court (1993), unless otherwise indicated.

feeling responsible for being sexually abused, not feeling that she wore the wrong thing or was in the wrong place or said it wrong or should have told someone sooner. Then I would work on how you could still have a happy life and be a well person even though you've been abused; this doesn't ruin your whole life.

These are just—I have exercises and things that I move along in a process like that.

Q And this is what you did with [S.A.C.]?

A Yes.

Q And did she continue to—during this treatment did she continue to tell you more about the incidents that occurred?

A Yes, she did. And that's—yes, she did.

Q Is that a natural progression for her?

A Yes, it is.

Q And with [S.A.C.] did you emphasize to her the need to tell the truth about these things?

A I have emphasized that since we started the court process because, of course, that's necessary. Probably I hadn't emphasized it much before that, no.

    \*    \*    \*    \*    \*    \*

Q Did you ever—did you discuss other things, like, it's wrong to tell lies and things of that nature?

A I did. After we started coming to court I got a book from the Rape Crisis Center in Springfield that's for children. It says that in the book and we talked about it, how—how you would gain power by telling the truth, how people would support you. Here's the Judge; here's the Prosecutor; here's the Defense Attorney; and it has drawings. And we have talked about that.

Q And did she seem to understand those concepts?

A Yes, she did.

■ Defendant concedes this issue can only be reviewed for plain error since no objection was made to Crane's testimony at trial nor was it raised in his new trial motion. In our discretion, we can review for plain error under Rule 30.20. Defendant bears the burden of demonstrating the claimed error so substantially affected his rights that manifest injustice or a miscarriage of justice would result if the error is left uncorrected. *State v. Hornbuckle*, 769 S.W.2d 89, 93 (Mo. banc 1989), *cert. denied*, 493 U.S. 860, 110 S.Ct. 171, 107 L.Ed.2d 128 (1989). Plain error relief requires that Defendant go beyond a mere showing of demonstrable prejudice to show manifest prejudice affecting his substantial rights. *Id.*

■ All we glean from Crane's testimony is that S.A.C. was told to be truthful, not to lie, and she seemed to understand the difference. At no time did Crane remark that S.A.C. was truthful with her or that she believed S.A.C.'s statements. Crane's testimony actually revealed that some of S.A.C.'s revelations were rather bizarre and inconsistent in nature. Yet, Defendant argues this testimony explicitly vouched for the credibility of S.A.C. and invaded the province of the jury on that issue. We disagree.

Defendant principally relies on *State v. Taylor*, 663 S.W.2d 235 (Mo. banc 1984), where the State's expert witness, a psychiatrist, was allowed to state the victim suffered from "rape trauma syndrome" and further comment, implicitly, that the victim was in fact raped. The doctor testified his diagnosis was based on his belief of the victim's statements to him and that he evaluated her veracity by observing her conduct during his examination. He further gave his opinion of the victim's reliability when he stated she had not fantasized the rape. The Court held the expert "went too far in expressing his opinion that the victim suffered rape trauma syndrome as a consequence of the incident with defendant.... That conclusion vouches too much for the victim's credibility and supplies verisimilitude for her on the critical issue of whether defendant did rape her." *Id.* at 240.

*Taylor* is factually unlike the present case. Defendant concedes Crane was not

qualified by the State as an expert witness. She did not testify her counseling was based on her belief of S.A.C.'s statements nor did she attempt to evaluate S.A.C.'s veracity. Furthermore, Crane gave no opinion that S.A.C.'s testimony was reliable by stating she had not fantasized the sexual abuse. Crane's only opinion was that S.A.C. understood the difference between telling the truth and lying. Her opinion did not advise the jury which path S.A.C.'s testimony would follow.

Defendant also relies on *Hellstrom v. Commonwealth*, 825 S.W.2d 612 (Ky.1992) (court held inadmissible a social worker's testimony that sexually abused child was traumatized and child's "delayed" disclosure of event is common from child victimized by a family member), and *Martin v. State*, 819 S.W.2d 552 (Tex.App.1991) (testimony of caseworker that she felt victim of child abuse was truthful held inadmissible). Like *Taylor*, these cases do not support Defendant's contention. Defendant has failed to show manifest prejudice affecting his substantial rights. Point denied.

■ In his second point, Defendant claims the trial court erred in denying his motion for new trial because "juror Heisner intentionally failed to disclose the fact that he did not like or trust [Defendant's] family when this ground was explored on voir dire...."

During voir dire, in response to defense counsel's questions, venireperson Heisner stated he knew Defendant through his employment in Miller, Missouri. Heisner added that he had no extensive personal contact with Defendant. Defense counsel asked if any member of the venire panel knew Defendant's brother, and Heisner responded affirmatively. Heisner did not respond when defense counsel asked if any member of the venire panel had any reason why they could not give Defendant a fair trial. Heisner sat on the jury.

Defendant's motion for new trial contained an affidavit from Sandra L. Maenner who sat on Defendant's jury. In pertinent part, the affidavit stated:

That at the beginning of said deliberations, a juror, later identified to me as Darrol L. Heisner, stated, among other things:

a. That he knew the family of the Defendant, Stephen M. McKee; and

b. That he did not like the Defendant's family.

That based on Mr. Heisner's comments and conduct, I was left with the firm impression that Mr. Heisner considered the Defendant's family associations when determining the Defendant's guilt or innocence, and that his comments and conduct could have prejudiced other jury members against the Defendant.

Defendant believes Maenner's affidavit is evidence that Heisner intentionally concealed his dislike for Defendant's family, and he intentionally concealed his bias and prejudice against Defendant. We cannot reach such a conclusion.

■ A prospective juror has the duty to fully, fairly, and truthfully answer all questions directed to him during voir dire. *State v. Tidwell*, 726 S.W.2d 380, 382 (Mo.App.1987). We are not persuaded Heisner breached that duty, even assuming Maenner's affidavit correctly stated facts. Heisner did not conceal that he knew Defendant's brother nor did he conceal any dislike for Defendant's family because he was never asked to respond to such a question.

■ Maenner's "impression" that Heisner considered the Defendant's family when deciding Defendant's guilt is nothing more than a claim of misconduct inside the jury room. A juror may not impeach the jury's verdict after it has been rendered. *Amrine v. State*, 785 S.W.2d 531, 535–36 (Mo. banc 1990), *cert. denied*, 498 U.S. 881, 111 S.Ct. 227, 112 L.Ed.2d 181 (1990); *State v. Blaylock*, 705 S.W.2d 30, 36 (Mo. App.1985). "Missouri law has long held that a juror's testimony or affidavit may not be used to impeach the verdict as to misconduct inside or outside the jury room whether before or after the jury is discharged." *State v. Fleer*, 851 S.W.2d 582, 595 (Mo.App.1993). Thus, we find no abuse of discretion by the trial court in failing to grant Defendant's motion for new trial.

■ Defendant's third point claims the trial court abused its discretion in allowing Janice Crane to testify to S.A.C.'s hearsay statements because her statements were inadmissible under § 491.075 in that the time, content and circumstances of the statements do not provide adequate indicia of reliability.

Defendant was charged and tried for a crime under Chapter 566, and the victim was under the age of twelve when her statements were made to Janice Crane. Thus, § 491.075 is applicable. That statute reads, in pertinent part:

1. A statement made by a child under the age of twelve relating to an offense under chapter 565, 566 or 568, RSMo, performed with or on a child by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings in the courts of this state as substantive evidence to prove the truth of the matter asserted if:

(1) The court finds, in a hearing conducted outside the presence of the jury that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(2) The child either:

(a) Testifies at the proceedings; or

(b) Is unavailable as a witness.

Prior to trial, a hearing was conducted as required by the statute and the trial court entered findings that the time, content and circumstances of the statements of S.A.C. to Janice Crane provide sufficient indicia of reliability. We have noted that S.A.C. testified at trial.

Over Defendant's trial objection, Crane was allowed to testify about S.A.C.'s statements to her. Defendant argues those statements lack sufficient indicia of reliability because of the time delay between the alleged sexual abuse (June, July, or August 1990) and the statements to Crane (commencing August 27, 1990) and because Crane made no effort to determine S.A.C.'s veracity.

■ " 'Section 491.075(1) accords the trial court discretion whether the time, content and circumstances of a child's state-ment provide sufficient indicia of reliability to justify its admission into evidence.' " *State v. Whittle*, 813 S.W.2d 336, 341 (Mo. App.1991) (*quoting State v. Potter*, 747 S.W.2d 300, 305 (Mo.App.1988)). Our review is for an abuse of that discretion.

As for the time difference, S.A.C. first described her sexual abuse by Defendant to Crane in late August. The alleged abuse occurred no earlier than June. At the outside, less than ninety days separated both occurrences. Numerous cases in this state have held that much longer time periods do not destroy the reliability of a child-victim's statements. *Whittle* at 340 (just under two years); *State v. Taylor*, 735 S.W.2d 412, 414 (Mo.App.1987) (several months); *State v. Keil*, 794 S.W.2d 289, 293 (Mo.App.1990) (almost a year). In view of these decisions, allowing Janice Crane to testify concerning statements first made within ninety days of the crime was not an abuse of discretion.

Defendant's argument that Crane should have determined the veracity of S.A.C.'s statement has no merit. That job was for the jury after the trial court determined if the statements were admissible under the statute. The record does reveal inconsistencies and possible exaggerations in S.A.C.'s statements. However, the central facts of Defendant's alleged acts were stated by S.A.C. consistently and do not suggest fabrication. The trial court's findings on this issue were supported by substantial evidence. Point III is without merit.

■ The fourth point asserts the trial court erred in refusing Defendant's request to have S.A.C. view a photographic lineup "for the purpose of identifying any of the individuals pictured as being present" when an alleged act of sexual abuse occurred.

At a bench conference, defense counsel proposed to show S.A.C. an array of photographs which included one of the trial judge, the then chief justice of the Missouri Supreme Court, defense counsel's cousin, the ABA president, a published author and a few state senators. In support of his request, defense counsel indicated he was seeking to test S.A.C.'s ability to identify

people and her susceptibility to suggestions. In response to the State's relevancy objection, defense counsel stated that because S.A.C. has testified other men were present during some of the incidents, "her susceptibility to suggestion is relevant." The objection was sustained.

■ This point presents nothing for our review because Defendant did not make an offer of proof of the evidence he claims the trial court erroneously excluded. When an objection is sustained to proffered evidence, the party offering the evidence must show its materiality and relevancy by way of an offer of proof to preserve the matter for our review. *State v. Clay*, 763 S.W.2d 265, 270 (Mo.App.1988).

The purpose of an offer of proof is to insure that the trial court and opposing counsel understand what evidence is being offered and its relevance to the case. The offer should be specific and in sufficient detail to demonstrate its admissibility; mere conclusions of counsel will not suffice. Missouri courts agree that a proper method of presenting and preserving an offer of proof is to place the witness upon the stand and question him outside the presence of the jury. While this method is preferable, it is not the only accepted method. Some Missouri courts have also allowed counsel to make the offer in narrative form by summarizing the proposed testimony of the witness. It is, however, more difficult for counsel to present a detailed and specific summarization of a witness' testimony without presenting conclusions of counsel. When counsel uses the narrative offer of proof he runs a greater risk that the court will find the offer insufficient.
*State v. Townsend*, 737 S.W.2d 191, 192 (Mo. banc 1987) (citations omitted).

"An offer may be in narrative form so long as the offer is definite, is specific, is not mere conclusions of counsel, and *sets out sufficient facts* to demonstrate the admissibility of the evidence." *State v. Hurtt*, 836 S.W.2d 56, 59 (Mo.App.1992). Here, defense counsel's narrative offer of proof failed to state any facts sufficient to demonstrate the admissibility of the evi-

dence. In fact, defense counsel stated S.A.C. would probably not identify any of the pictured individuals as being present and "[i]f she doesn't identify them we'll go on." This statement reflects the reason why the offer of proof was insufficient. Because of the failure to properly preserve and present the offer of proof the trial court committed no error in its ruling.

Defendant's last point is directed to the giving of Instruction No. 4, the reasonable doubt instruction in the format patterned by MAI–CR3d 302.04. This point has no merit for the reasons given in *State v. Bogard*, 836 S.W.2d 87, 89 (Mo.App.1992).

### No. 18282

In the alternative to point I of his direct appeal, Defendant presents a single point on this appeal from the denial of his Rule 29.15 motion without an evidentiary hearing. Defendant asserts the motion court erred in failing to conduct an evidentiary hearing regarding his allegation of ineffective assistance of counsel. He alleged his motion pleaded facts not refuted by the record that his counsel failed to object to Janice Crane's testimony which vouched for the credibility of the victim. He argues the verdict would have probably been different had counsel objected and this testimony prohibited.

■ Our review of a denial of a Rule 29.15 motion is limited to a determination of whether the findings, conclusions and judgment of the motion court are clearly erroneous. Rule 29.15(j); *State v. Vinson*, 800 S.W.2d 444, 448 (Mo. banc 1990). Such findings, conclusions and judgment are clearly erroneous only if a review of the entire record leaves the court with a firm impression that a mistake has been made. *Id.*

■ To prevail on a claim of ineffective assistance of counsel, a movant must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). To prove deficient performance a movant must

show that counsel's acts or omissions were outside the range of professionally competent assistance. *Id.* To do so defendant must overcome the presumption that counsel's challenged acts or omissions were sound trial strategy. *State v. Childers,* 801 S.W.2d 442, 447 (Mo.App.1990). In order to show prejudice, a movant must show that there was a reasonable probability that, but for the errors by his attorney, the jury would have had a reasonable doubt respecting his guilt. *Id.*

To be entitled to an evidentiary hearing on the issue of ineffective assistance of counsel, a defendant seeking relief under Rule 29.15 must plead facts, not conclusions, which, if true, would warrant relief. *State v. Flenoid,* 838 S.W.2d 462, 470 (Mo.App.1992). The allegations must be unrefuted by the record, and the matters complained of must have prejudiced the movant. *Id.* A hearing is not required if the motion, files, and records of the case conclusively show that the movant is not entitled to relief. Rule 29.15(g).

Defendant argues that his counsel was ineffective for failing to object to the testimony of Janice Crane set forth under point I of this opinion. The motion court determined "the examination which took place was not bolstering the credibility of the alleged victim."

Failure to object to evidence constitutes ineffective assistance of counsel only if the failure is of such character as to deprive defendant substantially of his right to a fair trial. *Williams v. State,* 783 S.W.2d 457, 458 (Mo.App.1990). Counsel renders ineffective assistance only if his conduct so undermines the proper functioning of the adversary system that the trial cannot be relied on as having reached a just result. *Id.*

Here, we determined under point I no plain error resulted from the admission of Crane's testimony because Defendant failed to show manifest prejudice affecting his substantial rights. Based on that determination we cannot say that the trial court's findings, conclusions and judgment are clearly erroneous.

Furthermore, Defendant's motion did not allege facts which would entitle him to a hearing. Allegations like Defendant's in a motion for postconviction relief must identify a reasonable probability that objections would have changed the result of the trial. *Robinson v. State,* 785 S.W.2d 323, 324 (Mo.App.1990). In his motion, Defendant alleged "[t]he only evidence against movant at trial was drawn directly or indirectly from the statements of the alleged victim. Movant was therefore prejudiced by counsel's failure to object to the State's attempts to bolster the truthfulness of the alleged victim with Crane's testimony." These allegations constitute opinions and conclusions, not facts, which, if true, would have warranted relief. Absent such allegations in the motion, Defendant was not entitled to an evidentiary hearing. *See State v. Felton,* 834 S.W.2d 883, 889–90 (Mo.App.1992).

The judgment of the trial court and the order of the motion court are affirmed.

FLANIGAN and GARRISON, JJ., concur.